WILLIAM A. HALSEY ET AL., PLAINTIFFS IN ERROR, v. ISRAEL G. ADAMS ET AL., DEFENDANTS IN ERROR.

Argued March 15, 1899—Decided June 19, 1899.

The managers of a fire insurance company instructed their local agents, by letter, to procure a reduction of the amount insured by a policy issued by them.  The policy contained no provision for compulsory reduction, but did permit cancellation upon paying a rebate of premium. The instructions were not complied with and the managers received no information that the reduction had not been effected.  A fire occurred and the company paid the whole insurance.  In a suit by the company against the agents to recover the difference between the amount of insurance paid and that which would have been paid had the insurance been reduced as directed, the trial court refused to admit evidence as to the meaning of the word " reduce" in the letter of instructions and directed a verdict for the defendants.  *Held*, erroneous because—

1. The case falls within the rule that parol evidence is admissible to show the special meaning of terms used with relation to a business well understood by the parties.

2. The letter of instructions may fairly be construed as a direction to the agents to endeavor to agree with the insured on a reduction of the amount of the policy, and if unsuccessful to report to the managers, to the end that the policy might be canceled according to its terms; and in the absence of a report to the contrary the managers could conclude that a reduction had been made and a case existed for a jury whether the plaintiff had not sustained injury through a breach of the defendants' duty.

On error to the Supreme Court.

For the plaintiffs in error, *Sherrerd Depue.*

For the defendants in error, *Thompson & Cole.*

The opinion of the court was delivered by

NIXON, J. All the material facts in the record before us are undisputed. The plaintiffs in error were formerly associated in the business of underwriting policies of insurance under the title of Manufacturers and Merchants Fire Association of New Jersey, upon the Lloyd's plan, as authorized by the act of the legislature of this state, approved March 25th, 1895. *Gen. Stat., p.* 1784. In the prosecution of their business, agents were appointed in different parts of the state, and among them were the defendants in error, Israel G. Adams & Company, of Atlantic City. Through these agents a fire insurance policy was issued to the Citizens Ice and Cold Storage Company for $3,500. After this policy had been in force about a month the general managers of the insurance company, by letter, directed the agents to reduce the amount of the policy to $1,500. Through the neglect of an employe of the agents this letter never reached them, and the instructions were not complied with, nor was any effort made to reduce the amount when the fire occurred, which resulted in a loss to the plaintiffs of $2,038.69. Suit was brought in the Supreme Court to recover $1,164.96, the difference between the sum actually paid and that which would have been paid had the policy been reduced as directed.

The case was tried before the Circuit judge in Essex county, who directed a verdict for the defendants, and the judgment thereupon entered is by this writ brought here for review.

The questions presented by the exceptions grow out of the relations between the insurers and their agents. The policy itself, as the record shows, has fulfilled its function as a contract between the company and the insured, all the claims under it having been paid, and no question is here raised as to the rights of the insured. The policy itself appears in this case only in the character of an exhibit to throw light incidentally upon the mutual relations of the respective parties to the present controversy.

The business of the plaintiffs in error, as the proofs show, was conducted almost exclusively by their general managers,

Adams, Lockwood and Forman, partners. As required by the statute under which the company was organized, Charles W. McMurran had been appointed their attorney in fact, but it does not appear that he performed any duties in the active management of the business. It was affirmatively proved and not in any way controverted, that Adams, Lockwood and Forman were " managers for the United States," their duties being " to accept business and regulate the policy of the company, what lines they should write, and to settle all losses," and as stated in answer to a question by the court, " to dictate the policy, such lines as they should carry, at such rates, issue authority to agents, to receive money or pay." In the exercise of these powers, they issued the following commission to Adams & Company, the defendants in error :

" MANUFACTURERS AND MERCHANTS FIRE ASSOCIATION OF NEW JERSEY,

" 188 Market St., Newark, N. J.

" NEWARK, October 1st, 1897.

" Be it known that Israel G. Adams & Co., of Atlantic City, in the county of Atlantic, and State of New Jersey, are appointed and by these presents duly constituted agents of the Manufacturers and Merchants Fire Association of Newark, N. J., with full power to receive proposals for insurance against loss or damage by fire in Atlantic City, N. J., and vicinity, to fix rates of premium, to receive moneys and to countersign, issue, renew and consent to the transfer of policies of insurance, subject to the rules and regulations of said association, and to such instructions as may from time to time be given.

" The power hereby conferred may be revoked at any time the association may so elect.

" In witness whereof the Manufacturers and Merchants Fire Association have caused these presents to be signed by its duly appointed managers in the city of Newark, N. J., this first day of October, 1897.

"ADAMS, LOCKWOOD & FORMAN,

*"Managers."*

These agents afterwards, in the usual course of their business, on October 7th, 1897, issued policy No. 51,408 to the Ice and Cold Storage Company, for $3,500. On the 3d of November, 1897, the general managers instructed the agents to reduce the policy to $1,500, by a letter from which we quote what relates to this matter, to wit:

"MANUFACTURERS AND MERCHANTS FIRE ASSOCIATION
OF NEW JERSEY,
"188 Market St., Newark, N. J.
"Charles W. McMurran, Attorney for the Underwriters.
"Adams, Lockwood & Forman, Managers.
" Telephone 797, Newark.
"NEWARK, November 3d, 1898.
"*I. G. Adams, Atlantic City, New Jersey:*
\* \* \* \* \* \* \* \* \* \*

" With reference to policy No. 51,408, Citizens Ice and Cold Storage Co., after looking over the list of companies and the amounts carried, we think our line is too large and must ask you to reduce it to $1,500.

" In case of loss we do not care to have the Manufacturers and Merchants Fire Association quoted on the risk for $3,500, when all the large stock companies are writing but $1,250 and $1,500 apiece.

" Yours truly,
"ADAMS, LOCKWOOD & FORMAN,
"*Managers.*"

The well-established general rule of law that an agent is bound to carry out the instructions of his principal and must respond for losses that occur in consequence of his failure to do so, was clearly stated by the learned trial judge in his charge. The material exceptions taken were to the refusal of the court to admit certain questions put by counsel for the plaintiff, the first being, " What by the custom of the trade is the duty of an agent when instructed to reduce the amount of a policy ? " This question was asked John S. Lockwood, one

of the general managers, and being objected to, was overruled. The ground for overruling this question, briefly stated, as it appears from the record, was the absence of any condition in the policy itself providing for a reduction of its amount, and, therefore, the only remedy for the insurance company, if dissatisfied with its contract, was to order its cancellation on paying a rebate of premium in the manner prescribed by the terms of the policy, and that the instructions given in the letter to the agents could not be carried out and were inconsistent with the rights of the party insured and that the evidence proposed would in effect vary the terms of the policy. We think there was error in this ruling. By its express terms the question was only an offer to show that some duty devolved upon an agent who received instructions to reduce a policy, and what according to the custom of the business or trade that duty was. The object was to affirmatively prove that the word "reduce" as used has a definite and well-understood meaning among those engaged in the fire insurance business. Its purport was not to relieve anyone from doing what he was bound to do by the terms of any contract, nor to show that either party should not carry out fully every promise or undertaking in this policy of insurance, which was done after the fire, and the cold storage company whose property was insured is not a party to this suit in any way.

It was not, and of course could not be, contended that a fire insurance company must carry until the policy expires what it deems to be an excessive risk, and it is equally true that with the consent of the insured the amount carried may be reduced to any sum satisfactory to both parties, and there is nothing in the record from which the presumption arises that the consent of the insured could not have been obtained to a reduction to the sum desired, no effort to that end having been made.

There is no room to doubt the true meaning of the letter, and there is no suggestion that the agents did not understand that the plaintiffs were unwilling to carry an insurance of

$3,500 for the cold storage company. The evidence proposed by the question overruled was to show that the word "reduce," as used in the letter, has a special and technical meaning according to the customs of the fire insurance business, and thus was a trade term, and clearly indicated to the defendants, who were fire insurance agents of large experience, what steps should be taken to relieve plaintiffs from the excessive amount. The ruling of the court denied any such meaning to the word in the present case. That parol evidence is competent to prove the special or trade meaning of words has long been settled. The rule established by a multitude of cases is stated in 1 *Greenl. Evid.*, § 295, as follows: "In regard to words which are purely tecknical or local—that is, words which are not of universal use but are familiarly known and employed, either in a particular district or in a particular science or trade—parol evidence is always receivable to define and explain their meaning among those who use them; and the principle and practice are the same in regard to words which have two meanings, the one common and universal and the other technical, peculiar or local, parol evidence being admissible of facts tending to show that the words were used in the latter sense and to ascertain their technical or local meaning."

Now, is the word "reduce," as used in the instructions given, such as to bring it within the operation of the foregoing rule? We think it is. There are but few words in our language that have so many technical meanings as this one. In the medical profession, instructions to reduce a fracture would mean one thing; in the military world, to reduce a fort, quite another; to the mathematician, to reduce a problem, another; to the chemist, to reduce a substance, still another, and so on. But in each case it would be competent to show by parol evidence, if any exigency required it, just what the words "to reduce" meant in the connection in which they were used, and that they clearly implied to anyone in the business or trade in which the instructions were given just what means should be used and steps taken to

accomplish the purpose, intended. Therefore, when the offer was made to prove by parol evidence that in the fire insurance business this elastic verb "to reduce," as used in the letter which is the foundation of this suit, has a well-known technical and special meaning, this testimony should not have been excluded from the jury, whose duty it would be to determine what weight it should have in the case.

The fact that the actual meaning of a trade term is a question for the jury is not in conflict with the general rule that it is the duty of the court to construe written instruments. In *Goddard* v. *Foster*, 17 *Wall.* 123 (at *p.* 142), the court said : "The rule of law that the interpretation of written instruments is a question of law for the court is applied in full force to agreements to be deduced from the correspondence of the parties, and the fact that the language of the letters containing the offer or acceptance is doubtful does not relieve the court of this duty or make the question one of fact for the jury. It is only where terms are technical, or terms having a peculiar meaning in a particular trade or place, that the aid of a jury is invoked to ascertain their meaning."

Another exception was taken because the trial judge overruled the following question : "Now, in answer to a question put by Judge Thompson that it was the custom that agents should reduce the amount of policies, let me ask you what an instruction to reduce would require an agent to do in case he could not make an agreement with the insured for a reduction of the policy?"

After the question previously considered had been overruled the propriety of putting this one to the same witness can be determined only by ascertaining whether the cross-examination of the witness by the defendants' counsel reopened the question as to the agent's duty upon receiving instructions to reduce the policy. The evidence thus elicited was as follows :

"*Q*. Did you expect the agent to reduce that policy on the face of it—that is, the original policy in the hands of the cold storage company?

"*A.* We expected him either to reduce it by endorsing the policy, or issuing a new policy, which was the custom of the business.

"*Q.* Was there any way by which he could reduce that policy?

"*A.* Certainly; it is done thousands of times during the year.

"*Q.* How?

"*A.* By sending notice to the insured to reduce that policy, as the company has ordered it reduced, and re-write the policy.

"*Q.* Then you would re-write the policy? ·

"*A.* Or reduce by endorsement.

"*Q.* Do you ever reduce by endorsement?.

"*A.* Yes, sir.

"*Q.* Was that the custom of your company?

"*A.* Yes; and all others throughout the United States.

"*Q.* And you permitted agents to reduce policies without any reference to you?

"*A.* Yes, sir; we ordered him to do so."

Now, this cross-examination seems to have opened up anew the whole field of inquiry from which the plaintiff had been excluded by the previous ruling. The right of the plaintiff to cross-examine upon all new matters thus brought into the case, is well established. 8 *Encycl. Pl. & Pr.* 123, and cases there cited. In *State* v. *Hopkins,* 50 *Vt.* 316, the court said (at *p.* 331): "The rule upon this subject is that where new matter is called out by cross-examination, the witness as to such new matter is regarded as the witness of the party who calls it out, and he is subject to the same rules as to the right of cross-examination as he would be if the party calling out such new matter had first produced the witness." In *People* v. *Buchanan,* 145 *N. Y.* 1, it was held, "A witness may be examined by the party calling him upon all topics on which he has cross-examined, and this although the cross-examination was as to facts not admissible in evidence." We think the scope of the cross-examination of this witness made the

question now under consideration a competent one, and there was error in overruling it.

But even if the letter of instructions was to be construed by the court, still it was error to direct a verdict for the defendants. Read in connection with the other documents in the cause and the undisputed facts, the letter may fairly be construed to be a direction to the agents to endeavor to agree with the insured in a reduction of the amount of the policy, and if unsuccessful, to report to the managers to the end that the policy might then be canceled according to its terms. In the absence of a report to the contrary the managers could conclude that the reduction had been made and a case existed for a jury whether the plaintiff had not sustained injury through a breach of the defendant's duty. In this aspect of the case, the pleadings may need be remoulded, but that is a matter of course.

Numerous propositions were argued before us, but they relate mainly to matters of defence, and in the present disposition of the case it is not necessary to discuss them.

The judgment of the court below should be reversed and a *venire de novo* issued.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, COLLINS, DIXON, GARRISON, GUMMERE, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH. 12.