(120 N. W. 543.)

---

QUEEN CITY FIRE INSURANCE COMPANY v. FIRST NATIONAL BANK OF HANNAFORD, NORTH DAKOTA, AND A. O. ANDERSON.

Opinion filed March 6, 1909.

**Insurance — Principle and Agent — Failure to Comply with Instructions.**

1. Plaintiff sent to defendant, as its agent, the following letter of instructions: "The above indicated policy covers $2,000 on a grain elevator building, a class on which our maximum line is but $500. This policy was written last July at the authorization of our Mr. Fox, but at that time we had reinsurance facilities by which we could reduce our liability. Now it becomes necessary for us to cancel our reinsurance for the reason that the reinsurance law of North Dakota does not permit our reinsuring in any companies not admitted in this state, and unless we cancel this reinsurance, we will be liable to a fine. In view of this fact, we must request that you relieve us of $1,500 of the liability under the above policy at the earliest possible moment, and advise us of such relief, as we are now carrying $2,000, all in the Queen City on the elevator building." Defendant admitted receiving said letter a day or two after its date, December 20, 1905, and the undisputed evidence is that he neglected to comply with such instructions, and on January 15, 1906, the property covered by the policy of insurance was destroyed by fire, and plaintiff was required to and did discharge its liability under such policy by paying the sum of $1,752.29, and this action is to recover damages for defendant's negligence in disobeying such instructions. *Held:* (1) That such instructions being in writing and being clear and specific, it was defendant's duty, as such agent, to comply therewith without delay. (2) The facts not being in dispute, the question as to defendant's liability was for the court, and not the jury, to determine. (3) Such instructions were not reasonably susceptible to the construction placed upon them by defendant to the effect that he should relieve the plaintiff of its liability only at such time as he could place such insurance with another company.

**Same — Measure of Damages.**

> 2. The proper measure of damages is the amount with interest which plaintiff was obliged to pay to the insured under the policy over and above what it would have been obliged to pay had such instructions been complied with. This sum is $1,314.22, instead of $1,249.92, as the trial court charged the jury.

Action by the Queen City Fire Insurance Company against the First National Bank of Hannaford and A. O. Anderson. The action was dismissed as to the bank, and, from a judgment for defendant and an order denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial, plaintiff appeals.

Reversed.

*S. L. Glaspell, R. G. McFarland,.* and *U. S. G. Cherry,* for appelant.

*Robert M. Pollock,* for respondent.

FISK, J. This litigation arose in the district court of Griggs county, and resulted in a judgment in defendant's favor. Plaintiff moved for a new trial, which motion was denied, and this appeal is from the judgment as well as from the order denying such motion. The action was originally brought against the First National Bank of Hannaford and A. O. Anderson, but at the close of plaintiff's testimony, and on motion of defendant's counsel, the action was dismissed as to the defendant bank, and such ruling is not challenged in this court.

The facts necessary to a correct understanding of the questions involved are briefly as follows: During the years 1905 and 1906 plaintiff was doing a fire insurance business in this state, and defendant Anderson was the duly authorized and acting local agent for plaintiff until January 19, 1906, at Hannaford, with authority to issue and cancel policies of insurance. That in the month of July, 1905, Anderson, as such agent, issued and delivered to one Hyde, a policy in the sum of $2,000, covering an elevator then owned by Hyde. Such policy continued in force until the following 15th day of January, when such elevator was destroyed by fire, and plaintiff was required under its terms to pay thereunder to Hyde's grantee the sum of $1,752.29. On December 20, 1905, plaintiff sent or caused to be sent to Anderson the following letter of instructions relative to such policy, to wit: "December 20, 1905

A. O. Anderson, Hannaford, N. D., Policy No. 6650, W. S. Hyde. Dear Sir: The above indicated policy covers $2,000 on a grain elevator building, a class on which our maximum line is but $500. This policy was written last July at the authorization of our Mr. Fox, but at that time we had reinsurance facilities by which we could reduce our liability. Now it becomes necessary for us to cancel our reinsurance for the reason that the reinsurance law of North Dakota does not permit our reinsuring in any companies not admitted in that state, and unless we cancel this reinsurance we will be liable to a fine. In view of this fact we must request that you relieve us of $1,500 of our liability under the above policy at the earliest possible moment and advise us of such relief, as we are now carrying $2,000 all in the Queen City on the elevator building. Kindly give this matter your prompt attention and oblige Yours truly, A. H. Watson, Assistant Secretary." Anderson admits receiving such letter in due course of mail, but did not, as such letter requested, relieve the company of $1,500 of the liability under said policy. His contention is that he construed said instructions, and had reasonable ground for thus construing the same, to mean that he should relieve the company of its liability to the extent of $1,500 as soon as he could replace the same with another company, and that he, in good faith, endeavored, but failed in doing this. It is appellant's contention that these instructions were clear and specific, and that it was Anderson's duty to at once, on receipt of such letter, cancel such policy and issue another for only $500, and this is, in substance, the main controversy between these parties.

The trial court submitted the case to the jury upon the evident theory that it was for the jury to determine as a question of fact which of said theories were correct. We do not so construe the testimony. The instructions were clear and specific and were susceptible of but one construction, and defendant was bound at his peril to comply therewith without delay. By such letter defendant was, in effect, instructed to at once relieve appellant of its liability to the extent of $1,500. This he could do by canceling such policy and writing a new one for said amount. Appellant was not interested in having said $1,500 transferred to some other company, but it was vitally interested, for reasons stated in the letter, in causing its liability to be reduced $1,500. Defendant, as plaintiff's agent, owed it the duty of carrying out, promptly and in good

faith, its instructions relating to the subject of such agency. This duty defendant signally failed of performance. He admits receiving the letter of instructions on December 21st or 22d, and, although 24 days elapsed between such receipt and the fire, he failed and neg-lected to relieve the company of such liability as he was instructed to do, and while defendant no doubt was honestly mistaken in the purport of the instructions, and in good faith attempted to comply therewith as he construed the same, we are agreed that he was wholly un-warranted in placing such construction thereon, and hence he must respond to his principal for the damages suffered by it on account of his disobedience thereto. If the instructions had been couched in ambiguous language, and were reasonably susceptible of the construction contended for by defendant, an entirely different ques-tion would have been presented. The instructions being in writing and being clear and specific, it was the province of the court, and not the jury, to construe them. This is elementary, but we quote briefly from the authorities as follows: "It is firmly established and universally recognized that the judge is to construe and interpret the contracts and other written instruments of every description that are offered in evidence. Their instruction and interpretation are governed by established rules of law of which knowledge on the part of the jury cannot be presumed. And hence the question must be left to the court." 1 Jones on Ev., section 172, and cases cited. "As a general rule the interpretation or construction of written instruments, which are drawn in language so plain as not to require the aid of intrinsic evidence, is a question for the court, and it is error to submit such a question to the jury." 1 Thompson on Trials, section 1065; 1 Elliott on Ev., section 30; Hamilton v. Liverpool Insurance Co., 136 U. S. 255, 10 Sup. Ct. 945, 34 L. Ed. 419; Kraber's Ex'rs v. Union Ins. Co., 129 Pa. 8, 18 Atl. 491. In Halsey v. Adams, 63 N. J. Law 330, 43 Atl. 708, the letter of instruction to the agent was as follows: "With reference to Policy No. 51408, Citizens Ice and Cold Storage Co., after looking over the list of companies, and the amounts carried, we think our line is too large, and must ask you to reduce it to $1,500. In case of loss we do not care to have the Manufacturers' and Merchants' Fire Association quoted on the risk for $3,500, when all the large stock companies are writing but $1,250 and $1,500 apiece." And the court stated: "In Goddard v. Foster, 17 Wall. 123-142, 21 L. Ed. 58, 'the rule of law that the interpretation of written instruments

is a question of law for the court is applied in full force to agreements to be deduced from the correspondence of the parties, and the fact that the language of the letters containing the offer or acceptance is doubtful does not relieve the court of this duty, or make the question one of fact for the jury. It is only where terms are technical, or terms having a peculiar meaning in a particular trade or place, that the aid of a jury is invoked to ascertain their meaning.'" The court also said: "But, even if the letter of instruction was to be construed by the court, still it was error to direct a verdict for the defendants. Read in connection with the other documents in the cause and the undisputed facts, the letter may fairly be construed to be a direction to the agents to endeavor to agree with the insured in a reduction of the amount of the policy, and, if unsuccessful, to report to the managers, to the end that the policy might then be canceled according to its terms. In the absence of a report to the contrary, the managers could conclude that the reduction had been made, and a case existed for a jury whether the plaintiff had not sustained injury through a breach of the defendant's duty." This same case came before the New Jersey court later and is reported in 64 N. J. Law 724, 46 Atl. 773, where it was held, "that such instructions, according to the trade meaning of the word 'reduce,' required defendants to endeavor to induce the policy holders to consent to the required reduction, and if no such endeavor was made, or, if made, was ineffectual, to report the failure to the plaintiffs, who, by the terms of the policy, had power to cancel the policy and discharge their liability thereon; that defendants did not obey their instructions or report their omission to do so; and that plaintiffs were thereby left liable to, and, upon a loss occurring, were required to pay the amount of the policy. Upon the undisputed evidence there was no question for the jury." It was the undoubted legal right of the plaintiff insurance company to have the agency executed according to its instructions. It is also apparent that such instructions were not susceptible of a misinterpretation, and the undisputed evidence is that defendant neglected within a reasonable time, or at all, to comply therewith, and by such negligence he incurred a liability to his principal to respond in damages for such negligence.

This brings us to that portion of appellant's third assignment of errors, wherein is challenged that part of the instructions to the jury relating to the measure of damages, the trial court restricting

the amount to the sum of $1,249.92. This was clearly erroneous, as the undisputed evidence disclosed that plaintiff's liability and the amount which it paid under said policy was the sum of $1,752.29. If the policy had been reduced to $500 pursuant to the instructions, plaintiff's liability would have been but one-fourth of such amount, or $438.07. The difference between this sum and $1,752.29 is $1,314.22, which is the amount plaintiff was damaged as aforesaid.

It follows that the judgment and order appealed from were erroneous, and are accordingly reversed and a new trial ordered. All concur.