No. 19,169.

THE INSURANCE COMPANY OF NORTH AMERICA, *Appellant,* v. JOSEPH BAER, Deceased, revived in the name of M. HAWK, as Administrator, etc., *Appellee.*

SYLLABUS BY THE COURT.

1. ISSUE—*Not Relied upon in Trial Court—Will Not be Treated as an Issue on Appeal.* A wrong judgment, whereby a plaintiff corporation was defeated in the trial court, will not be upheld in this court on the sole ground that the corporate existence of the plaintiff was not proved, when that corporate existence was not treated as one of the issues on trial, and such failure of proof is presented and is called to the attention of the unsuccessful party for the first time in this court.

2. INSURANCE AGENT—*Issuing Policy in Violation of Instructions—Agent Liable for Loss.* An insurance agent who issues a policy of insurance in violation of the instructions of his company is liable to the company for the amount of insurance paid and expenses incurred by the company on account of a loss under the policy.

3. SAME. An insurance agent can not defeat his liability to his company for issuing a policy in violation of his instructions by showing that the company might have escaped liability on the policy by litigation.

Appeal from Marshall district court; SAM KIMBLE, judge. Opinion filed April 10, 1915. Reversed.

*Robert Stone,* and *George T. McDermott,* both of Topeka, for the appellant.

*W. J. Gregg,* and *J. D. Gregg,* both of Frankfort, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This is an action brought by an insurance company against its agent, to recover damages sustained by reason of the agent's issuing an insurance policy in violation of instructions given by the company to the agent. Judgment was rendered in favor of the defendant. The plaintiff appeals.

The plaintiff alleges that it is a corporation. The defendant for his answer files a general denial, alleges affirmative matter, and verifies the answer, as follows:

"State of Kansas, Marshall Co., ss.

"Joe Baer, being first duly sworn upon his oath, says that he has read and knows the contents of the foregoing answer, and that the statements, allegations and averments therein contained are true."

No evidence was introduced to show that the plaintiff was a corporation. The evidence shows that Joseph Baer, who was a banker, was the agent of the plaintiff, with power to issue policies of insurance; and that he wrote W. D. Perry, state agent for the company, on February 24, 1908, asking where he could insure stallions and jacks, and in what company. To this Perry replied, on March 2, as follows:

"This will acknowledge receipt of your esteemed favor of the 24th ultimo inquiring relative to insurance on fine horses and in reply beg to advise that while such risks are not regarded in high favor by any company, nevertheless in view of the fact that you have rendered us very satisfactory service during the past years you may feel at liberty to insure such risks in the North America. The rate on such stock in a private barn should not be less than 2.50 per hundred and of course if such stock is kept in a livery barn or other specifically rated risk the rate on such risk would. govern in such cases.

"Your form should read so as to describe the particular animal by name, breed, and positively color, 'while and only while' in the premises described."

March 10, 1908, Perry again wrote Baer as follows:

"I have for acknowledgement your favor of the 3rd, relative to insurance on fine horses. . . .

"Since writing you last I have received a letter from General Agent Downing with particular reference to this class of business and he advised that he has been scrupulously declining to insure high priced horses particularly those used for breeding purposes. Inasmuch, however, as have been discussing the matter with you I am forwarding your correspondence to him

and have asked him to give you such final instructions as he may deem advisable under the circumstances. It seems that I was laboring under a false impression in view of what Mr. Downing had said and I prefer that he give you the final word in connection with this class of business."

The inquiries of Baer appear to have been turned over to W. N. Johnson, general agent of the company, who on March 13, 1908, wrote him as follows:.

"We are just in receipt of a letter from State Agent Perry with which he enclosed your letter to him under date of March 3d relative to the writing of insurance upon fine horses, and in compliance with his request we advise you of our wishes in this matter, we beg to say that for a good many years we have declined to insure high priced horses used either for running, trotting or breeding purposes. So far as racing horses are concerned, there is altogether too much moral hazard connected with them to warrant us in insuring them, and as to horses used for breeding purposes, they are so often vicious and unmanageable as to become an extremely hazardous class of property to insure. In either case, the rate of insurance is inadequate, for the hazard is fully equal to that of a livery stable, and we would be unwilling to insure the class at less than 3% while located in the owner's own barn, or if they go from place to place and our insurance follows and covers them, we should want at least double that rate. For these reasons we would much prefer to be excused from insuring fine horses. We very much regret our inability to accommodate you but trust that we may be able to do so in other directions to our mutual advantage."

On March 22, 1910, Baer issued a policy of fire insurance on a stallion and jack for $300 each, describing them as one horse and one mule, and making the policy effective anywhere. W. W. Potter, employee of the defendant, made out the daily report of the policy as follows:

"4. On contents of said stable, the sum of $600.00 Dollars. Divided as follows, to-wit:
  300.00 on one Horse
$ . . . on Live Stock of all kinds."
  300.00 on one Mule."

The policy provided that "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . or if the subject of insurance be personal property and be or become encumbered by a chattel mortgage."

Sometime after the policy was issued, the owner of the stallion and jack gave a chattel mortgage on the animals, to a bank with which Baer was not connected. He learned of this chattel mortgage and had a conversation with the owner concerning the same. The animals insured were used for breeding purposes, and were burned in a livery barn not covered by the policy. The company compromised the claim, paid the owner $500, expended the sum of $48.84 in adjusting the policy, and sued Baer for the amounts thus paid. A demurrer to the evidence was interposed and was sustained by the court. Of this the plaintiff complains. It also complains that the court excluded evidence offered by the plaintiff. It does not appear that this evidence was produced on the motion for a new trial.

Under instructions given him, it was Baer's duty to notify the company on learning of any encumbrances on any of the property insured. He did not notify the company at any time of the chattel mortgage. The company learned of this chattel mortgage, and of all the misconduct of the agent, before the payment of the loss and expense.

1. The defendant contends that the demurrer was properly sustained, because the verified general denial put in issue the allegation of the plaintiff's incorporation. This seems not to have been specifically presented to the trial court. Technically, it was presented by the demurrer to the evidence. The case was tried as though this matter was not questioned. All parties seem to have assumed that it was not in issue. The demurrer to the evidence was sustained because, in the opinion of the trial court, the company had a defense to the policy for breach of the encumbrance clause

contained therein. We will not decide whether or not the verified general denial properly put in issue the incorporation of the plaintiff, because that question is for the first time presented in this court. We will treat this question, in this case, as it was treated by the trial court, and we will decide this case on the questions on which it was decided by that court. In *Gorrell v. Battelle,* 93 Kan. 370, 144 Pac. 244, this court said:

"Unless the record shows that the matter was specifically and unequivocally brought to the attention of the trial court while it had possession of the case and power to dispose of it as justice required, this court will regard the issue as abandoned. It would be gross abuse of procedure for a defendant to veil an oversight in making proof under a general demurrer to the evidence and a general motion for a new trial, and then appeal to this court for a new trial when the evidence is all the time lying in a public office barely outside the reach of judicial knowledge, and when the new trial, if granted, would extend to that issue alone." (p. 372.)

2. Was Baer liable for the loss sustained by the company on account of this policy? In 31 Cyc. 1451, we find this language:

"It is the duty of an agent whose authority is limited by instructions to adhere faithfully thereto, regardless of his own opinion as to their propriety or expediency, and if he exceeds, violates, or neglects such instructions he will be liable to the principal for any loss or damage resulting therefrom."

In 22 Cyc. 1437, under the article "Insurance," we read:

"The agent must respond in damages for any breach of duty arising out of his relations as agent which has resulted in injury to the company. Thus if the agent violates instructions as to the class of risks which he is to insure and thereby renders the company liable for a loss on a risk which would not have been accepted had the instructions been observed, the agent will be liable to the company for the amount of loss which it has been compelled to pay on account of such risk."

In *Ins. Co. v. Clark & Cressler,* 126 Iowa, 274, 100 N. W. 524, it was said:

"In an action against an insurance agent for wrong-fully writing a risk at a lower rate than authorized and failing to report the same, and the evidence tended to show that the company would have cancelled the risk had it known of it, the measure of damages is the total loss sustained thereby." (Syl. ¶ 7.)

In *Hanover Fire Ins. Co. v. Ames,* 39 Minn. 150, 39 N. W. 300, a fire insurance agent was held liable for issuing a fire insurance policy contrary to instructions. In 22 L. R. A., n. s., 509, is found a note to *Insurance Co. v. First National Bank,* 18 N. Dak. 603, 120 N. W. 545, on "Liability of insurance agent to company for failure to follow instructions," as follows:

"There is no doubt that an insurance agent will be liable to the company he represents for his negligent or wilful failure to obey instructions, thereby causing loss to his principal."

The evidence shows that Baer issued this insurance policy in violation of his instruction, and that in his daily report he did not properly describe the property, nor the place in which the animals were to be covered by the policy.

3. The defendant contends that the plaintiff had a valid defense against liability on this policy, and that payment on the policy was made with knowledge of those defenses. This does not excuse the defendant. Baer wrongfully issued the policy. On its face the company was liable. The agent of the company knew of that chattel mortgage. His knowledge, as against the policy holder, probably was the knowledge of the company. Having such knowledge, and permitting the policy to stand, the company was probably liable on the policy. The company, in good faith, presumably, paid this policy to avoid litigation. The improper conduct

Insurance Co. v. Baer.

of Baer first created the liability of the company, and afterwards continued that liability. His estate can not escape by asking the company to take chances in a lawsuit.

We think the demurrer to the evidence was improperly sustained, and that the evidence should have been submitted to the jury. The judgment of the district court is reversed, and a new trial is ordered.