No. 29,469.

ELIZABETH PARKMAN HARDCASTLE, *Appellee*, v. EDWARD D. HARD-
CASTLE and O. B. HARDCASTLE, *Appellants.*

(291 Pac. 757.)

Opinion
filed October 11, 1930.

*W. S. Kretsinger* and *S. S. Spencer,* both of Emporia, for the appellants
*Owen S. Samuel,* of Emporia, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: The action was brought to set aside a deed on the
ground that it was made to hinder, delay and defraud creditors.
Plaintiff prevailed, and the defendants appeal.

Plaintiff pleaded that she was granted a divorce from the de-
fendant, Edward D. Hardcastle, on August 7, 1920; that in a decree
entered at that time she was allowed $50 per month for alimony and
$100 per month for the support of the two minor children of the
parties; that defendant was in arrears on this judgment to the
extent of $7,300; that executions had been issued and returned un-
satisfied; that under the will of one J. S. Kenyon the defendant,
Edward D. Hardcastle, had been devised an interest in certain real
estate; that after the death of Kenyon the defendant Edward D.
Hardcastle on September 14, 1928, conveyed the real estate so

devised to him to his father, the defendant O. B. Hardcastle; that such conveyance was made without consideration and for the purpose of hindering, delaying and defrauding the creditors of Edward D. Hardcastle, and particularly to cheat and defraud the plaintiff and her minor children; that at the time he accepted the deed the defendant O. B. Hardcastle knew of the judgment in plaintiff's favor in the divorce action; knew that it was unpaid and that executions had been issued thereon and returned unsatisfied and that the defendant Edward D. Hardcastle was in default on that judgment and that he was insolvent.

The defendant Edward D. Hardcastle answered alleging that the judgment in favor of the plaintiff was void; that plaintiff had full knowledge of the making of the deed to his father and did not object to the making thereof, and that it was made for a good and sufficient consideration. The defendant O. B. Hardcastle filed a general denial.

Upon these issues the case was tried to the court, and thereafter the court made findings of fact and conclusions of law as follows:

"From the evidence introduced the court finds generally in favor of the plaintiff and against the defendants and both of them, and that the allegations contained in said petition are true:

"1. That the plaintiff was legally divorced from the defendant on August 7, 1920, in case No. 14,308, which judgment the defendant has since recognized by his subsequent marriage.

"2. That plaintiff was awarded alimony for her support and that of her minor children, as stated in said petition, and that at the time of the filing of the present action defendant, Edward D. Hardcastle, was indebted to her under said award of alimony and support for the minor children of the defendant in the sum of $7,300, and that plaintiff was a creditor of said Edward D. Hardcastle.

"3. That plaintiff never did remarry. That both of said children are minors.

"4. That defendant for a short time made payments as ordered by the court, but thereafter made only partial payments and for a long period of time contributed nothing to the support of his said wife or children. That finally and on the 1st day of May, 1928, upon application of defendant the amounts payable for the support, care, maintenance and education of said children were by the court at such time reduced to $10 per month. That defendant has failed and continues to fail to pay the amount of $50 per month due under said order of the court in said divorce action.

"5. That the defendant, O. B. Hardcastle, is the father of Edward D. Hardcastle, and the grandfather of the two minors, and well knew of the granting of the divorce. Knew the provisions of the divorce decree and that his said son was not making the payments as provided in the decree.

"6. That the said Edward D. Hardcastle, in 1928, and at the time of the making of the deed referred to in petition, was insolvent and had been for some considerable time prior thereto. That, the said O. B. Hardcastle well knew of such insolvency.

"7. That the late J. S. Kenyon made provision for the payment to Edward D. Hardcastle of the sum of $1,000 in cash and gave to him the real estate described in the petition; that such property so received from said estate was all the property owned by the said Edward D. Hardcastle at the time he attempted to convey said property to his father, the grandfather of the minor children.

"8. That the said O. B. Hardcastle was not a creditor of said Edward D. Hardcastle, and said Edward D. Hardcastle did not owe his father any monies.

"9. That there was no consideration for the deed made by the son to his father, O. B. Hardcastle.

"10. That the said Edward D. Hardcastle made and delivered said deed to his father, O. B. Hardcastle, with the intent to commit a fraud upon this plaintiff and his minor children, and the effect of the deed was to hinder, cheat, wrong and defraud his said minor children and said plaintiff.

"11. That said deed is invalid and should be set aside, canceled and held for naught.

"12. That said property mentioned in said deed should be applied to the satisfaction of the judgment in favor of plaintiff in the divorce action.

"13. That, prior to the filing of this action, two executions were issued against the defendant, Edward D. Hardcastle, and both were returned unsatisfied. That this fact was known to the defendant, O. B. Hardcastle, prior to the making of the deed in question.

"It is therefore, by the court, considered, ordered and adjudged that the deed mentioned and described in plaintiff's petition from the said Edward D. Hardcastle to the said O. B. Hardcastle dated September 14, 1928, and duly recorded in the office of the register of deeds of Lyon county, Kansas, on the 17th day of September, 1928, and duly recorded in book 162 at page 444, be and the same is hereby set aside and declared and adjudged to be null and void.

"That the said O. B. Hardcastle be and he hereby is adjudged to have no right, title, interest or estate in or to said property therein described. That the sum of $7,300, together with interest at 6 per cent from July 1, 1919, be adjudged to be a first and prior lien against the interest of the said Edward D. Hardcastle in and to said real estate described in said deed, and if the same be not paid within ten days from the rendition of this judgment that an order of sale issue and said property be sold to satisfy said judgment herein rendered and said sums due the said plaintiff from the said Edward D. Hardcastle. That the plaintiff recover her costs herein."

The appellants concede the rule that findings made by the trial court, if based upon any evidence, are conclusive on the appellate court, but contend that findings Nos. 8, 9, 10 and 11 are wholly unsupported by any evidence and are contrary to all the evidence. Appellants review the evidence showing that within a short time

after the decree of divorce was granted, Edward D. Hardcastle lost his job, at which he was employed at a salary of $300 per month, and that thereafter he was out of regular employment; that his earning capacity was limited and in order to keep up his payments to his wife he began to borrow from his father as early as 1921; that by January 3, 1928, he had borrowed from his father a total of $5,500. They contend that the evidence showed that during 1924 and 1925 the defendant Edward D. Hardcastle was out of work practically all the time; that he gave his father notes from time to time for the amounts borrowed, and these were all merged into one note dated January 3, 1928, for $5,500; that since the divorce decree was granted defendant had paid plaintiff from some source approximately $7,200; that he didn't earn that much and it must have been borrowed from his father. Both the father and son testified to these facts; that their testimony is uncontradicted by any evidence offered on the part of plaintiff, and that therefore the findings complained of cannot stand.

As to finding No. 8 the appellee calls attention to certain contradictions in the testimony given by the father and son, pointing out, among other things, that the father testified that at one time he loaned the son $2,500, while the son stated that the largest amount he ever received from his father at any one time was $1,200; that the testimony showed numerous checks were given by the father to the son and that a number of notes were given by the son from time to time, which were merged in the note of $5,500. An explanation of the failure to produce the canceled checks was made by showing that while the father was ill the building in which his business was conducted was remodeled, and a Mr. Davis, a contractor, took an old desk in which the father kept his papers and removed therefrom some old canceled checks and other papers and destroyed them. Davis so testified. The appellee calls attention to the further fact that defendants failed to produce the various notes which were given by the son to the father from time to time and which according to their testimony were merged in the $5,500 note. Neither did the appellants offer any explanation of their failure to produce these notes. The appellee points out that if these notes were merged as claimed, they would have been returned to the son, yet he neither produced the notes at the hearing nor accounted for any loss or destruction of them. Attention is also called to the testimony of the father that he sometimes deposited money advanced the son,

to the son's credit, in the Citizens National Bank of Emporia, but no records of the bank were introduced to corroborate this testimony or to corroborate the testimony relating to the numerous bank checks. Attention is also called to a letter written by the defendant Edward D. Hardcastle to his daughter, in which he told her of the conveyance of the land to his father; that he had been owing her grandfather $5,500 for a long time, but that the grandfather had agreed not to credit the entire amount of the value of the land against his indebtedness, but would advance him money to pay the expenses of sending the daughter and her brother to college. On cross-examination he testified that he had no such agreement with his father. The father testified he credited the entire value of the land, $2,000, on the note.

The appellee further points out that it clearly appears from both the testimony of the father and son that they knew Edward D. Hardcastle was insolvent; that they knew he was in arrears on the alimony judgment; that there were executions issued on this judgment in April and July, 1928, both of which were returned by the sheriff unsatisfied. The testimony showed that Kenyon died in July, 1928, and that the transfer of the interest of Edward D. Hardcastle in the real estate was made to the father on September 14, 1928. Shortly prior to that time the sum of $1,000, which was also bequeathed to Edward D. Hardcastle under Kenyon's will, was likewise turned over by the son to the father and credited on the note.

The appellee further calls attention to the testimony of the father in which he said that whatever he gave his son was given him as a loan to be charged against the interest of the son in the father's estate. In other words, the money was given the son by way of advancement against his interest in the father's estate.

Taking these various bits of testimony into consideration, the apparent conflicts between the testimony of the father and son, and applying the rule that the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony, this court cannot determine that there was no evidence to support finding No. 8. Necessarily plaintiff had to obtain the evidence as to the transaction from the father and son. The trial court having heard the testimony and having had the opportunity to observe the demeanor of the witnesses on the stand, and having taken into con-

sideration the various circumstances in connection with the litigation, made finding No. 8, and under the prior decisions of this court it is not within our province to disturb the findings so made. After the trial court made finding No. 8 the other findings followed as a matter of logical sequence and we see no ground upon which they should be disturbed. The trier of the facts has free rein when it comes to a question of what testimony shall be given credence even where the testimony is uncontradicted.

In the case of *Harrod v. Latham*, 77 Kan. 466, 94 Pac. 11, this court said:

"The weight and sufficiency of testimony to prove a fact in issue is for the jury. It does not necessarily follow that a fact is established because testimony fairly tending to prove it is uncontradicted by opposing testimony. The burden of proving the material averments of the petition not admitted was upon the plaintiff and it cannot be said, as a matter of law, that the jury were bound to accept the evidence as true, although not contradicted. (*Jevons v. Railroad Co.*, 70 Kan. 491, 78 Pac. 817; *Railway Co. v. Geiser*, 68 Kan. 281, 75 Pac. 68.) Where there is evidence tending to show the constitutive facts advanced by the party sustaining the burden of proof, it is for the jury to say whether the evidence is sufficient for that purpose." (p. 474.)

In *Swartz v. Levin*, 108 Kan. 224, 194 Pac. 646, in discussing a situation where certain testimony was uncontradicted, the court said:

". . . No basis for reversal is afforded, because the trier of the facts was not bound to believe the defendants' evidence as to the weights at destination, even in the absence of express contradiction. (*The State, ex rel., v. Woods*, 102 Kan. 499, 170 Pac. 986.) The trial court may have distrusted the veracity of the witnesses from something in their manner or from a suspicion growing out of the way in which the transaction had been conducted on the part of the defendants. At any rate, as the court was not persuaded by the evidence of the party on whom the burden of proof upon this issue rested, there was no occasion for requiring any rebuttal." (p. 226.)

See, also, *Fenn v. Kansas Gas & Electric Co.*, 118 Kan. 131, 234 Pac. 77, and cases cited.

The appellants further contend, however, that fraud cannot be presumed because of the relationship of the parties, and call attention to certain authorities. They cite the case of *Grisier v. Bank*, 102 Kan. 7, 169 Pac. 215, in which this court said:

"Failure of consideration and fraudulent purpose in the giving of a note and chattel mortgage will not be presumed because of the relationship of the parties." (Syl.)

Attention is also called to the case of *Dillon v. Bryant*, 104 Kan. 380, 179 Pac. 318, in which this court said:

"If defendant's contentions are sound, it would be necessary merely to show that the diligent creditor was a relative of the debtor and that the effect of the transaction was to give to the former a preference over general creditors. Such is not the law. . . . Mere relationship alone is not sufficient to show fraud." (pp. 382, 383.)

The foregoing decisions set forth a correct statement of the law. However, in this case there were other circumstances in addition to the actual testimony of the defendants which no doubt influenced the court in its decision.

While the mere relationship of the parties alone is not sufficient to establish fraud, yet this court has on several occasions held that the relationship of the parties is a circumstance which may be taken into consideration in determining that issue. In *Whitson v. Griffis,* 39 Kan. 211, 17 Pac. 801, it was held:

"Where the evidence shows that the mortgagor is a stepdaughter of the mortgagee, and that they lived together as members of one family, it is proper for the court to instruct the jury that such facts may be taken into consideration by them in determining the good faith of the transaction." (Syl. ¶ 2.)

In the more recent case of *Citizens Finance Co. v. Seamans,* 129 Kan. 743, 284 Pac. 422, the contentions of the appellants were the same as those made here, namely, that the judgment was not supported by the evidence and that there was no direct evidence contradicting the proof offered by appellants. This court in discussing the question said:

"In so many cases of this character, where there is a claim that a sale of all the property by a failing or insolvent creditor,·to his wife, or some other member of the family, is made to defraud creditors, direct proof of fraud is not easily obtained. In most cases it must be established by circumstances surrounding the transaction. It has been said:

" 'It is rare indeed that fraud can be proved by the direct and positive testimony of reliable witnesses. It is an almost invariable rule that it can only be deduced from a consideration of many facts and circumstances; from the conduct, statements, dealings, and surroundings of the parties; from their relationship to each other, and from·the many little doings of the parties which indicate their secret motives, which as a rule are studiously concealed from those it is intended to wrong.' (*Morse v. Ryland,* 58 Kan. 250, 259, 48 Pac. 957.)

". . . The good faith of the transaction was a question of fact to be determined by the trial court, and it is found that the sale was made in fraud of creditors. This court is not a fact-finding tribunal, and the credence to be given to the statements of witnesses was a function for the trier of the facts.

"Besides the peculiar circumstances of the sale set forth in the record, there may have been much in the appearance of the witnesses, and their manner of testifying· at the trial, that tended to discredit their evidence.

In addition to the fact that Mr. Seamans and his son were being pressed by creditors, that several judgments had been rendered against them just about the time of the sale, and that they were in fact insolvent, the sale of the property to their wives naturally gave rise to suspicions. Where the transfer is from husband to wife, the circumstances are to be closely scrutinized, to see that it is free from fraud." (pp. 745, 746.)

As pointed out in the decisions from which we have hereinbefore quoted, there are so many things which enter into the trial court's determination of the facts that it is impossible for this court to take the statements of witnesses as they come before us in an abstract of the record and from these statements get a comprehensive view of the real situation. This court has always recognized the fact that the trial judge is in a better position to determine the actual facts, because the living witnesses come before him to testify, and he not only hears their testimony, but he observes their conduct upon the witness stand—the promptness or lack of promptness with which they answer—the apparent candor or lack of it, and numerous other matters, all of which are proper to be taken into consideration in determining what credence shall be given to the testimony of a witness.

After reviewing the record and the previous decisions of this court in similar cases we are unable to conclude that the findings complained of are not supported by the evidence or are contrary to it.

After the case was submitted to this court the appellants filed a supplemental brief calling attention to the recent decision in the case of *Conway v. Conway*, 130 Kan. 848, 288 Pac. 566. In that case a judgment for alimony allowing a monthly sum payable until death or remarriage was held void. The judgment for alimony allowed plaintiff in this case is subject to the same defect.

The appellants call our attention to the answer filed in the action in which, along with other defenses, the appellants pleaded:

"This defendant further answering avers that the pretended judgment mentioned and described in plaintiff's petition in favor of the plaintiff, Elizabeth Parkman Hardcastle, is void and of no effect."

This is the only place in the record where this defense appears to have been brought before the trial court. The record does not show that this defense was urged upon the court below. Nothing is pointed out to the court to show in what particular or for what reason the judgment is void. The bald allegation that the judgment is void

without specifying in what respect it is so, or wherein lies the invalidity, is a mere conclusion of the pleader and does not sufficiently challenge the attention of the trial court to the defense so pleaded. So far as the record in this case discloses the point was never actually presented and argued to the court below. It was not urged upon the appeal to this court in the original brief, and not until appellants filed their supplemental brief calling attention to the Conway case, *supra*. It is manifestly improper to reverse a judgment on a point which was never presented to the trial court.

In the case of *Gorrell v. Battelle*, 93 Kan. 370, 144 Pac. 244, this court said:

"Unless the record shows that the matter was specifically and unequivocally brought to the attention of the trial court while it had possession of the case and power to dispose of it as justice required, this court will regard the issue as abandoned. It would be gross abuse of procedure for a defendant to veil an oversight in making proof under a general demurrer to the evidence and a general motion for a new trial, and then appeal to this court for a new trial when the evidence is all the time lying in a public office barely outside the reach of judicial knowledge, and when the new trial, if granted, would extend to that issue alone." (p. 372.)

See, also, *Insurance Co. v. Baer*, 94 Kan. 777, 147 Pac. 840; *Stewart v. Murphy*, 95 Kan. 421, 148 Pac. 609.

The judgment is affirmed.

HARVEY, J. (concurring in part only): I agree the findings of the trial court that the deed in question was given under circumstances which render it fraudulent as to plaintiff are supported by evidence, and from this it follows that the sum rightfully due should be adjudged a lien upon the real property conveyed thereby, but I would reduce the amount of that lien by the extent the judgment in the divorce case is void. That portion of the judgment in the divorce case by which defendant was required to pay plaintiff as permanent alimony $50 per month, unless the plaintiff should remarry, is void. (*Conway v. Conway*, 130 Kan. 848, 288 Pac. 566; *Noonan v. Noonan*, 127 Kan. 287, 289, 273 Pac. 409, where early authorities are collected.) Perhaps it is true, as the opinion treats it, that this question was not clearly presented to the court below, but the invalidity of that judgment is one which clearly appears from the record; no other evidence is needed to establish it. That portion of the judgment might be set aside even on motion. (R. S.

60-3009.) It is frequently referred to in the findings of the court and is embodied in the amount of the judgment lien decreed in this case. Our attention is specifically called to it before that decree becomes final, and in my judgment it should be corrected now.