NORTHWESTERN MUTUAL INSURANCE COMPANY v. J. W. HYLTON, INDIVIDUALLY AND TRADING AS HYLTON INSURANCE AGENCY

No. 7017SC4

(Filed 25 February 1970)

**1. Evidence § 5; Pleadings § 36— allegations — burden of proof**

A plaintiff has the burden of proof on all allegations, negative as well as affirmative, which are essential to his claim or cause of action.

**2. Insurance §§ 2, 10— insurer's action against agent — clerical mistake — reformation of policy — defense — liability of insurer**

Where an employee of an insurance agent erroneously attached to a fire insurance policy a rider providing for the unlimited occupancy of the insured's premises, rather than the standard policy rider providing that the insured's premises could not be unoccupied for more than 90 days, the insurance company issuing the policy could validly raise the defense of reformation of the policy to show the true intent of the parties in an action by the insured to recover for losses incurred by fire to premises unoccupied for 128 days; consequently, the trial court properly entered a judgment of involuntary nonsuit in the insurance company's action against the agent for recovery of a compromise payment made by the company to the insured in settlement of the claim arising out of the fire, since the insurer was not legally obligated to make the compromise payment to the insured.

**3. Insurance § 10— reformation of policy — clerical mistake**

Reformation of an insurance policy is allowed because of the insurer's clerical mistake, since in such instance it is apparent that the policy which was issued in fact does not set forth what had been agreed to and what was intended by all parties.

**4. Insurance § 10— reformation of policy — mistake of agent**

Where the insurer's agent is authorized to act in the premises and through his mistake or fraud the policy fails to express the real contract between the parties, or if by inadvertence or mistake of the agent provisions other than those intended are inserted, or stipulated premises are omitted, a court of equity has the power to grant relief by a reformation of the contract.

**5. Reformation of Instruments § 7— sufficiency of evidence — jury determination**

To reform or correct a written instrument on the ground of mutual mistake of the parties, the evidence must be clear, strong and convincing; whether or not the evidence is clear, strong and convincing in a particular case is for the jury to determine.

**6. Negligence § 11— indemnity — right ex contractu**

Indemnification is essentially a right *ex contractu.*

**7. Negligence § 11— common-law indemnity — active and passive negligence**

Common-law indemnity rests upon a contract implied by law from the circumstance that a passively negligent or derivatively liable tort-feasor

had discharged an obligation for which the actively negligent tort-feasor was primarily liable.

**8. Negligence § 11— common-law indemnity — primary and secondary liability**

The right of one compelled to pay money to "A" to obtain common-law indemnity from "B" is based on the principle of primary-secondary liability.

**9. Insurance § 2; Negligence § 11— insurer's action against agent — clerical error — indemnity — primary-secondary liability**

An insurance company is not entitled to recover from an insurance agent, on the theory of common-law indemnity, for the company's compromise payment to an insured under a policy of fire insurance to which a rider was erroneously attached by an employee of the agent, where (1) there was neither allegation nor proof that the agent was primarily liable to the insured, (2) there was no suggestion of misrepresentation or reliance or that the insured suffered any injury at the hands of the agent, and (3) even if indemnity were applicable, the insurer failed to show that it was legally liable to the insured.

**10. Negligence § 11—indemnity — legal liability of indemnitee**

Indemnity against losses does not cover losses for which the indemnitee is not liable to a third person, and which he improperly pays.

APPEAL by plaintiff from *Collier, J.,* 9 June 1969 Session of SURRY Superior Court.

In this action the parties waived jury trial and agreed that the trial judge would hear the evidence, find the facts, make his conclusions of law, and render judgment.

Admissions in the pleadings, stipulations, and other evidence — fully supported by the pleadings — tended to show the following:

In 1961 and 1962 defendant (Hylton) was operating an insurance agency and had an agency agreement with plaintiff (Northwestern). In March 1961 Hylton, as agent of Northwestern, issued a new standard fire insurance policy to Clarence and Robert Ayers (Ayers) covering a certain tenant dwelling in the amount of $10,000, the policy to be effective from 10 May 1961 to 10 May 1962. Work in connection with assembling and issuing the policy was done by Margaret Nichols (Nichols), an agent or employee of Hylton. The policy included a provision for rider form No. 256 to be attached thereto, said rider providing that the insured premises could not be unoccupied for more than 90 days. In assembling the policy, Nichols erroneously attached to the original policy rider form No. 252 which provided for unlimited unoccupancy of the insured premises. The face sheet of the policy showed that it was subject to endorsement

No. 256. The original policy and endorsements were forwarded to Workmen's Federal Savings and Loan Association, holder of lien on the insured premises, and carbon copies of the face sheet only were forwarded to Ayers, Northwestern, and the Fire Insurance Rating Bureau of Raleigh; a fifth copy of the face sheet only was kept by Hylton for his record. Standard endorsement No. 256 extended non-occupancy of the dwelling to 90 days in lieu of the 60-day non-occupancy standard policy.

On or about 10 March 1962, Hylton issued a renewal certificate renewing the policy for the period from 10 May 1962 until 10 May 1963. Premiums for both years were charged for the type of coverage subject to endorsement No. 256 and the renewal certificate recited that the policy was subject to endorsement No. 256. The insured dwelling became vacant on or about 7 April 1962 and was continuously vacant from that time until it was destroyed by fire on 14 August 1962, some 128 days later.

Following the fire, Ayers made demand on Northwestern for payment of the loss but Northwestern, laboring under the impression that the policy was subject to rider form No. 256 and knowing nothing of the attachment of rider No. 252 to the original policy, denied liability. In March of 1963, Ayers instituted suit against Northwestern to recover for loss occasioned by the fire. Thereafter, Northwestern discovered the apparent error made by Nichols and in its pleadings denied liability or coverage, contending that if the policy contained a rider No. 252 permitting an unlimited period of nonoccupancy, such rider was not according to the contract and Northwestern was entitled to have the contract reformed to speak the true agreement of the parties.

Prior to an adjudication of the Ayers case on the merits, Northwestern made a compromise payment to Ayers in the amount of $4,500 in settlement of their action. There has been no judicial determination that Northwestern was legally obligated to Ayers for the fire loss and Hylton was not a party to the Ayers action or the settlement agreement reached therein.

In this action plaintiff attempts to recover the $4,500 paid Ayers, plus court costs and counsel fees and expenses incurred in defending the Ayers action. Among other defenses, Hylton pleaded laches on the part of Northwestern and also the three-year statute of limitations.

After plaintiff introduced its evidence, defendant introduced into evidence the pleadings and judgment in the case of *Ayers v. North-*

*western Mutual Insurance Company* and renewed its motion for judgment of nonsuit. Thereafter, the trial court entered judgment of involuntary nonsuit from which plaintiff appealed.

*Deal, Hutchins & Minor by Fred S. Hutchins and William K. Davis for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson by J. Robert Elster for defendant appellee.*

BRITT, J.

[1] It is well settled in this jurisdiction that a plaintiff has the burden of proof on all allegations, negative as well as affirmative, which are essential to his claim or cause of action. 3 Strong, N.C. Index 2d, Evidence, § 5, pp. 603-604. Defendant contends that judgment of involuntary nonsuit was proper in the instant case for the reason that plaintiff failed to carry the burden of proving its legal obligation to pay the money for· which it seeks indemnity from the defendant. We agree with this contention.

[2] In testing the sufficiency of the evidence in the instant case to survive motion for nonsuit, we start with the assumption that the evidence does raise a reasonable inference that the wrong rider was attached to the original policy by Hylton's employee by error and mistake; defendant so stipulated. But, plaintiff had the burden of going further and proving that it incurred a *legal liability* because of the mistake. In its "Answer to Reply" filed in the *Ayers* case, Northwestern alleged that if a printed rider on form No. 252 was attached to the original policy issued to Ayers, it was by mistake and inadvertence and Northwestern asked that the policy be reformed to speak the true agreement between the parties. The question now arises, did Northwestern plead a valid defense in the *Ayers* action.

The mistake or clerical error upon which one seeks to base a cause of action may be approached as a "scrivener's error" or as a "mutual mistake." A scrivener is one "whose occupation is to draw contracts, write deeds and mortgages, and *prepare other species of written instruments.*" (Emphasis added.) Black's Law Dictionary, 4th Ed. The defense of mutual mistake is applicable to the facts of the *Ayers* case because "where the insurer's clerk has erroneously recorded the agreement, the mistake common to both parties * * * rests in the supposition of both that their writing states their agreement correctly." 17 Couch on Insurance 2d, § 66:51, p. 286.

**[3]**   Whether the clerical error here is considered to be a "scrivener's error" or "mutual mistake", the defense of reformation of the policy — so as to be enforceable only to the extent of the coverage within the actual intent of the parties — was available to Northwestern when it chose to settle the Ayers claim. The rationale of allowing reformation is concisely set out in 17 Couch on Insurance 2d, § 66:51, p. 286: "Reformation has been allowed because of the insurer's clerical mistake, since in such instances it is apparent that the policy which was issued in fact does not set forth what had been agreed to and what was intended by all parties."

**[4]**   Again in 17 *Couch*, § 66:42, p. 278, it is observed: "Where the insurer's agent is authorized to act in the premises, and through his mistake or fraud the policy fails to express the real contract between the parties, or if, by inadvertence or mistake of the agent, *provisions other than those intended are inserted,* or stipulated provisions are omitted, *there is no doubt* as to the power of a court of equity to grant relief by a reformation of the contract * * *." (Emphasis added.)

In *Williams v. Insurance Co.,* 209 N.C. 765, 185 S.E. 21, the court said of reformation: "The principle, as we have seen, applies to policies of insurance." In *Williams* the names of the plaintiffs as owners of certain insured buildings and as beneficiaries of the policy were omitted due to the inadvertence of the agent. The court allowed reformation as the policy of insurance did not represent the intention of the parties. The court in *Williams* said: "It is well settled that in equity a written instrument, including insurance policies, can be reformed by parol evidence, for mutual mistake, inadvertence, or the mistake of one superinduced by the fraud of the other or inequitable conduct of the other."

**[2, 5]**   It is also well settled that to reform or correct a written instrument on the ground of mutual mistake of the parties, the evidence must be clear, strong and convincing, and that "[w]hether or not the evidence is clear, strong and convincing in a particular case is for the jury to determine." *Insurance Co. v. Lambeth,* 250 N.C. 1, 108 S.E. 2d 36, and authorities therein cited. Thus, we do not hold here that on the record before us Northwestern, in the *Ayers* case, was entitled as a matter of law to have its policy of insurance corrected to include endorsement 256 rather than 252; what we do hold is that in the *Ayers* case Northwestern pled a valid defense — that of inadvertence or mutual mistake — and was in position to present sufficient evidence for the jury to determine under proper instructions if endorsement 252 rather than 256 was attached to the orig-

inal policy by inadvertence or mutual mistake, and in the absence of agreement — actual or implied — to the contrary, defendant Hylton, before being liable to Northwestern for indemnity, was entitled to the benefit of such determination. We are not required here to say if Hylton was a necessary or proper party to the *Ayers* suit. (See *Hildreth v. Casualty Co.*, 265 N.C. 565, 144 S.E. 2d 641).

[6, 7]    Plaintiff's arguments in asserting a cause of action against Hylton refer to negligence, mistake and indemnity. Indemnification is essentially a right *ex contractu.* Here, there is neither allegation nor proof of an express contract of indemnification. Common-law indemnity is said to rest upon a contract implied by law from the circumstance that a passively negligent [or derivatively liable] tort-feasor had discharged an obligation for which the actively negligent tort-feasor was primarily liable." *Hunsucker v. Chair Co.*, 237 N.C. 559, 75 S.E. 2d 768.

In *Hildreth v. Casualty Co., supra,* an injured party who had obtained judgment against the alleged insured brought an action against the insurer and its underwriter agent on an automobile liability policy, and the insurer pleaded a cross-action against its agent in which it asserted a right of common-law indemnity from the agent. The court allowed the cross-action. In *Hildreth* the plaintiff, an injured party standing in the shoes of the insured, asserted alternative rights of recovery: he sought to recover from the company on the theory the policy was effective and from the agent in the event the policy was found not to be effective. In *Hildreth* then, the insurance agent might subsequently be found liable to the claimant, and the insurer, as a secondarily liable party, would have the right of common-law indemnity against the agent.

[8]    The right of one compelled to pay money to "A" to obtain common-law indemnity from "B" is based on the principle of primary-secondary liability. See numerous cases in 10A N.C. Digest, Indemnity, § 13(1). The court in *Edwards v. Hamill*, 262 N.C. 528, 138 S.E. 2d 151, said:

> "Primary and secondary liability between defendants exists only when: (1) they are jointly and severally liable to the plaintiff [citations]; and (2) either (a) one has been passively negligent but is exposed to liability through the active negligence of the other or (b) one alone has done the act which produced the injury but the other is derivatively liable for the negligence of the former. [citations]"

[9]    In the instant case, there is neither allegation nor proof that the agent is in any fashion primarily liable to the insured or even

that the insured could have made any case of actionable negligence against him. There is no suggestion of misrepresentation or reliance or that the insured has suffered any injury at the hands of the agent. The court in *Edwards* held that the liability of both the indemnitee and the indemnitor to the third party (in the instant case, the insured) was essential: "The doctrine of primary-secondary liability cannot arise where an original defendant alleges that the one whom he would implead as a third-party defendant is *solely* liable to plaintiff." (Emphasis added.) In the instant case, if anyone is liable to the insured, it would be the insurer who would be *solely* liable.

[10] Defendant's argument puts the indemnity issue to rest by pointing out that, even if indemnity applied, the plaintiff cannot recover because it has failed to carry the burden of proof of showing, in response to defendant's denials, that it was liable to the insured. A concise summary of the applicable law is found in 41 Am. Jur. 2d, Indemnity, § 33, p. 723: "Indemnity against losses does not cover losses for which the indemnitee is not liable to a third person, and which he improperly pays." The plaintiff rested its case on this issue, conceding "it must be shown that the insurer has properly made payment to the insured." Plaintiff has made no such showing.

Defendant argues that the judgment of nonsuit was justified on other grounds including the applicability of the three-year statute of limitations, but we do not deem it necessary to discuss the other points raised.

The judgment of the superior court is
Affirmed.

BROCK and GRAHAM, JJ., concur.