**MARYLAND CASUALTY COMPANY, Plaintiff,**

v.

**R. H. LAKE AGENCY, INC., Defendant.**

**No. GC 705.**

United States District Court, N. D. Mississippi, Greenville Division.

July 7, 1971.

Douglas C. Wynn, Greenville, Miss., for plaintiff.

Roy D. Campbell, Jr., of Campbell, DeLong, Keady & Robertson, Greenville, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action was tried to the court and a jury at the United States Courthouse in Greenville, Mississippi in April, 1971. The trial was concluded with the verdict of the jury on April 19, 1971.

The action involves the claim by plaintiff against defendant for reimbursement of money paid by plaintiff to its insured, Stanley O. Ingram (Ingram), under a trip accident and baggage policy issued by defendant for plaintiff, as the local agent of plaintiff at Greenville. The complaint also seeks reimbursement of expenses incurred and paid in the investigation of the claim made upon plaintiff by Ingram for the proceeds of the policy.

The evidence produced at the trial showed that defendant at all pertinent times was the agent of plaintiff and engaged in issuing policies of insurance for plaintiff in the Greenville, Mississippi trade territory; that an agency contract between the parties was entered into which provided, inter alia, "the agent shall comply with the underwriting rules and regulations of the company"; that underwriting instructions issued by plaintiff relative to trip accident and baggage policies provided, in part, that "Policies may not be issued to * * * any person obviously blind, crippled, deformed, infirm or known to be in bad health, or travelling to any clinic or hospital for medical or surgical care"; that defendant sold and delivered to Ingram, a known paraplegic, one of plaintiff's trip accident and baggage policies in the principal sum of $50,000.00 which provided for the payment of the principal sum to Ingram for the accidental loss of "any combination of Hands, Feet or Eyes"; and that during the effective period of the policy Ingram suffered a loss of both feet as result of being shot through both lower legs by a rifle.

The evidence further showed that pursuant to a demand by Ingram for the proceeds of the policy plaintiff settled the claim for $37,500.00 and incurred claim expense in regard thereto in the sum of $2,964.90. Plaintiff settled Ingram's claim without suit being filed and without giving defendant any notice of the settlement or opportunity to resist payment thereof.

Plaintiff alleges in the complaint that "on or about December 27, 1966, while said policy of insurance was in force, the insured Stan Ingram was accidentally shot through both lower legs necessitating the amputation thereof". This allegation was denied by defendant's answer and placed at issue in the trial.

At the conclusion of the evidence, the court held, as a matter of law, that the defendant breached the agency contract by issuing the policy of insurance to Ingram. Plaintiff's motion for a directed verdict was, however, carried with the case and the court submitted the case to the jury on a special verdict with interrogatories. The two interrogatories with the answers given by the jury thereto, pertinent to the issue before the court, were:

"Do you find from a preponderance of the evidence in this case that the occurrence on or about December 27, 1966, whereby Stanley O. Ingram was injured and as result of which his feet were amputated was an accident?

Answer 'Yes' or 'No'

Answer No
_____
Enter here 'Yes' or 'No'.

Do you find from a preponderance of the evidence in this case that the incident which resulted in the amputation of Stanley O. Ingram's feet was

proximately caused or contributed to by his physical condition"

Answer 'Yes' or 'No'

Answer No

Enter here 'Yes' or 'No'."

The court did not enter a judgment on the verdict of the jury and requested additional briefs from the parties. Defendant contends that in order for plaintiff to prevail the evidence must show that its insured, Ingram, suffered a loss compensable under the policy, that is the loss of both feet as result of an accidental injury; and, that, since the jury has found that Ingram's loss of his feet was not the result of an accidental injury, plaintiff failed to sustain the issue and the judgment must be for the defendant.

Plaintiff cited, in a trial brief, submitted to the court, prior to the trial, 44 C.J.S. Insurance § 159 which holds in part:

> "* * * Thus, if the agent issues a policy in violation of his instructions, he will be liable to the company for the amount of loss which it has been compelled to pay on such policy, together with the expenses incurred in connection therewith; and it is no defense to the agent that the company might have escaped liability on the policy by litigation. * * *"[1]

Plaintiff also cited to the court 43 Am. Jur.2d, Insurance, § 169, which states:

> "* * * Although an insurance agent may within his apparent or ostensible authority bind the company to risks which his instructions forbid him to assume, he is liable to the company if he issues a policy in violation of his instructions and thereby subjects the company to a liability which it has forbidden him to assume for it. In such case, the agent is liable to the company for the amount of insurance paid and expenses incurred by the company on account of a loss under the policy, and he cannot defeat a recovery by showing that the company might have escaped liability on the policy by litigation, at least if it appears that the company paid the loss in good faith to avoid litigation, and would have been taking chances of incurring further liability by resorting to it. * * *"[2]

Both C.J.S. and Am.Jur.2d cite in support of the text the case of Insurance Co. of North America v. Baer, 94 Kan. 777, 147 P. 840, Ann.Cas.1917B, 491 (Kan. 1915). Defendant undertakes to analyze this case and demonstrate that it really does not support the editors' statement in the text.

The opinion of the court in *Baer* reflects that the suit involved an action by an insurance company against its agent to recover damages sustained by reason of the agent's issuing an insurance policy in violation of instructions given by the company to the agent. Judgment was rendered in favor of the defendant. The plaintiff appealed, and the appellate court, the Supreme Court of Kansas, reversed the trial court and directed a new trial.

It appears that Baer, a banker, issued a policy of fire insurance on a stallion and jack for $300.00 each, describing them as one horse and one mule, and making the policy effective anywhere, in violation of instructions given him by the insurance company. The policy provided that the entire policy would become void should the subject of the insurance be or become encumbered by a chattel mortgage. Sometime after the policy was issued, the owner of the stallion and jack gave a bank, with which Baer was not connected, a chattel mortgage on the animals. Baer, however, learned of the chattel mortgage and had a conversation with the owner regarding the same.

Thereafter, the animals insured were used for breeding purposes and were burned in a livery barn not covered by the policy. The insurance company compromised the claim, paid the owner $500.-00, extended the sum of $48.84 in ad-

---

1. 44 C.J.S. at 834–835.

2. 43 Am.Jur.2d at 226.

justing the policy, and sued Baer for the amounts thus paid. A demurrer to the evidence was interposed and sustained by the court. The record also shows that the court excluded the evidence offered by the plaintiff, and entered a judgment for the defendant.

Under the instructions given him, it was Baer's duty to notify the company on learning of the encumbrance on the stallion and jack. He did not notify the company at any time of the chattel mortgage. The company learned of the mortgage and of all the misconduct of the agent before payment of the loss and expense.

The evidence in the case showed that Baer issued the insurance policy in violation of his instructions, and, in his daily report, that he did not properly describe the property, nor the place in which the animals were to be covered by the policy. The defendant contended that the plaintiff had a valid defense against liability on the policy, and that payment on the policy was made with knowledge of the defenses. The court, however, rejected this defense and said:

> "This does not excuse the defendant. Baer wrongfully issued the policy. On its face the company was liable. The agent of the company knew of that chattel mortgage. His knowledge, as against the policy holder, probably was the knowledge of the company. Having such knowledge, and permitting the policy to stand, the company was probably liable on the policy. The company, in good faith, presumably, paid this policy to avoid litigation. The improper conduct of Baer first created the liability of the company, and afterwards continued that liability. His estate cannot escape by asking the company to take chances in a lawsuit." [3]

It is clear that the *Baer* court took the view that the insurance company was probably liable to the holder of the policy and that Baer's improper conduct brought about the loss. The court did not enter a judgment in the case, but sent the case back to the lower court with directions that the case be tried anew and submitted to the jury for its determination.

In the case sub judice, the court submitted to the jury the question of whether the loss of his feet by Ingram was the result of an accidental injury. The jury determined that it was not. Defendant argues that the case sub judice is distinguishable from *Baer*. The court agrees. Plaintiff alleges in its complaint that the injury was accidentally inflicted. The evidence does not support this view, or at least the jury so found.

The jury also found that the incident which resulted in the amputation of Ingram's feet was not proximately caused or contributed to by his physical condition. Based on the jury's determination of this issue defendant argues that the court should enter judgment for defendant, as there is no causal connection between defendant's failure to follow plaintiff's instructions and the injury to Ingram's legs.

In addition to C.J.S., Am.Jur.2d, and Baer, plaintiff cited in its pre-trial brief the case of Phoenix Insurance Co. v. Seegers, 192 Ala. 103, 68 So. 902 (1915). In *Seegers* the agent issued a policy of fire insurance to an insured against the express instruction of the company. The property insured was destroyed by fire and the insured sued the company for the face value of the policy in the sum of $2,500.00. The company agreed to pay $1,250.00 and a consent judgment was entered in this suit for that amount and cost of the suit. The company paid the judgment and cost and sued the agent to recover its loss. The court held:

> "Though the defendant received no commission to write insurance, he had been acting as plaintiff's agent in the city of Andalusia, and which fact was well known to Wilks when the agent issued the policy to him. *The plaintiff was liable to the insured on the policy*; the defendant would likewise

---

3. 147 P. at 842.

be liable to the plaintiff for issuing the insurance without authority, although the agent may not have received his commission as agent, from the state, to write insurance. * * * " (Emphasis supplied).[4]

It is clear in *Seegers* that there was no question but that the company was liable on the policy of insurance to the insured. The policy was issued by its duly authorized agent, though in violation of the company's instructions, and the loss suffered by the policy-holder was the one against which the policy was issued. This case is likewise distinguishable from the case sub judice. In *Seegers* there was no question as to the liability of the company. In the case sub judice the jury, by its verdict, found that the injury sustained by Ingram was not accidental, from which it follows that no liability on the policy existed.

The defendant cites in its pretrial brief, the case of Northwestern Mutual Insurance Company v. Hylton, 7 N.C. App. 244, 172 S.E.2d 226 (1970). This case appears to sustain the position of defendant that, in order to recover, plaintiff must prove that the injury giving rise to the loss of his feet by Ingram was accidentally inflicted.

In *Hylton*, the agent, Hylton, erroneously attached to a policy of fire insurance issued by him for his principal (Northwestern), an endorsement providing that the dwelling, which was the subject of the insurance, could remain unoccupied for an unlimited period of time. Whereas, Hylton intended to attach an endorsement providing that the dwelling could not remain unoccupied for a period of more than 90 days. The dwelling became vacant on April 7, 1962, and remained continuously vacant until the time it was destroyed by fire on August 14, 1962, some 128 days later. The insured instituted suit against Northwestern to recover the loss occasioned by the fire. Thereafter, Northwestern discovered the error made by Hylton and in its pleadings denied liability or coverage, contending that if the policy contained the wrong endorsement such was not according to the contract and understanding of the parties, and that Northwestern was entitled to have the contract reformed to speak the true agreement of the parties. Prior to an adjudication of the case on its merits, Northwestern compromised the claim, and settled with its insured.

The court held that an involuntary nonsuit was proper in the case because Northwestern failed to carry the burden of proving its legal obligation to pay the money for which it sought indemnity from its agent. The *Hylton* court said:

" * * * [P]laintiff had the burden of going further and proving that it incurred a *legal liability* because of the mistake. * * *

Whether the clerical error here is considered to be a 'scrivener's error' or 'mutual mistake', the defense of reformation of the policy—so as to be enforceable only to the extent of the coverage within the actual intent of the parties—was available to Northwestern when it chose to settle the Ayers claim. * * *

* * * Thus, we do not hold here that on the record before us Northwestern, in the Ayers case, was entitled as a matter of law to have its policy of insurance corrected to include endorsement 256 rather than 252; what we do hold is that in the Ayers case Northwestern pled a valid defense —that of inadvertence or mutual mistake—and was in position to present sufficient evidence for the jury to determine under proper instructions if endorsement 252 rather than 256 was attached to the original policy by inadvertence or mutual mistake, and in the absence of agreement—actual or implied—to the contrary, defendant Hylton, before being liable to Northwestern for indemnity, was entitled to the benefit of such determination. * * * * " [5]

4. 68 So. at 904.

5. 172 S.E.2d at 227, 228.

The *Hylton* rule appears to be applicable to the case sub judice—plaintiff had a valid defense to the claim of Ingram, i. e., the injury causing the loss was not accidentally inflicted and, therefore, was not within the coverage of the policy; and defendant, before being called upon to indemnify plaintiff against its loss, was entitled to the determination of that issue. Plaintiff in the case sub judice evidently held this view, for, when drafting the complaint, plaintiff alleged the injury to have been accidentally sustained. Plaintiff failed to carry the burden, and the jury decided the issue adversely to it.

Defendant does not question the good faith of plaintiff in settling Ingram's claim. Defendant concedes that based upon the investigation plaintiff had good reason to believe that at a trial plaintiff might or could be liable to its insured. Defendant's position is that the possibility of liability or potential liability is not sufficient to entitle plaintiff to recover, where, as here, plaintiff made a settlement of Ingram's claim without being sued therefor, and without giving notice to defendant of its intention to settle and affording defendant an opportunity of resisting the claim, or, if suit should be filed, to defend the suit. In short, defendant asserts plaintiff cannot recover because its claim is one in the nature of a claim for indemnity, and plaintiff has not brought itself within the standard that governs the principle of indemnity.

In order to recover from defendant on the theory of indemnity it is encumbent upon plaintiff to show that plaintiff was legally liable to Ingram under the provisions of the policy. Plaintiff cannot recover under this legal principle on the theory that plaintiff might have been liable to Ingram if plaintiff had not settled with him. 41 Am.Jur.2d, Indemnity, § 33.

The action sub judice is governed by Mississippi Law.[6] The parties have not cited, and the court has not found on independent research, a Mississippi decision directly in point with the issue presented in this case. Two cases, however, lead the court to believe that the Mississippi Supreme Court would hold on the issue now presented to the court that in order for plaintiff to recover the evidence must show and the jury must find that the incident giving rise to Ingram's claim involved an injury accidentally inflicted, or, in other words, that plaintiff was legally liable to Ingram under the terms and provisions of the policy of insurance. These cases are: Southwest Mississippi Elec. Power Ass'n v. Harragill, 254 Miss. 460, 182 So.2d 220 (1966) and Bush v. City of Laurel, Miss., 215 So.2d 256 (1968).

*Bush* and *Harragill* are distinguishable on the facts with the case sub judice, but the principle of law furnishing the vehicle for the decision of the court in *Harragill*, and cited with approval in *Bush*, appears to be, in the opinion of the court, applicable to the case sub judice. Plaintiff (*Southwest Mississippi Elec. Power Ass'n*) alleged in the declaration that it was guilty of no negligence in connection with the claim which it settled with a third party, and for which it claimed defendants, Harragill and another, were liable. The court held:

> "The authorities hold that to recover indemnity it is necessary for the plaintiff to allege and prove that he was legally liable to the person injured, and consequently, paid under compulsion. Otherwise, the payment is a voluntary one for which there can be no recovery. (Citations omitted)"[7]

In *Bush* the court said "An obligation to indemnify may arise from *a contractual relation*, from an implied contractual relation, or out of liability imposed by law."[8] (Emphasis supplied). In the

---

6. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

7. 182 So.2d at 223.

8. 215 So.2d at 259.

**580**

case sub judice, plaintiff's claim arises from a contractual relation with defendant. Therefore, it is logical to assume that the standard of indemnity as established by the Mississippi Supreme Court should govern the case sub judice.

The Mississippi Supreme Court recognized with approval the rule enunciated in *Harragill*, where the court in *Bush* said "Southwest Mississippi Electric Power Association v. Harragill, 254 Miss. 460, 182 So.2d 220 (1966) sets forth the rule that for a party to recover indemnity he must show that he was legally liable and that he paid under compulsion." [9]

 The court is of the opinion that should the issue presently presented to the court for decision, be submitted to the Mississippi Supreme Court, the Mississippi court would hold that before plaintiff can recover in the case sub judice, plaintiff must show and the jury must hold that plaintiff was legally liable to Ingram under the policy of insurance involved in this action.

The court holds that plaintiff's motion for a directed verdict should be overruled, and a judgment for the defendant entered on the verdict of the jury.