# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CA-00470-SCT

*HARTFORD CASUALTY INSURANCE COMPANY AND HARTFORD ACCIDENT & INDEMNITY COMPANY, A CONNECTICUT COMPANY*

*v.*

*HALLIBURTON COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/17/1999 |
| TRIAL JUDGE: | HON. JOHN T. KITCHENS |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | PAT H. SCANLON |
| | LAWRENCE CARY GUNN, JR. |
| ATTORNEYS FOR APPELLEE: | LEM G. ADAMS, III |
| | R. WEB HEIDELBERG |
| | DAVID RINGER |
| | CHARLES R. 'CHUCK' LANE |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 09/27/2001 |
| MOTION FOR REHEARING FILED: | 10/11/2001; denied 10/17/2002 |
| MANDATE ISSUED: | 10/24/2002 |

**BEFORE PITTMAN, C.J., MILLS AND COBB, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

## FACTS

¶1. Tomlinson Interests, Inc. was the owner of a gas well at the Johns Field in Rankin County. Tomlinson filed for bankruptcy in 1984, but because the well became damaged, the bankruptcy court authorized the bankruptcy trustee, Gary Knotsman, to drill a replacement well. Dan Pierce was hired as the engineer for the construction of the replacement well. On July 15, 1985, the well "blew out" and sour gas escaped. Hundreds of plaintiffs who lived in the vicinity of the well filed lawsuits against Tomlinson, Halliburton, and many others who were involved with drilling activities at the well. Hartford Casualty Insurance Co. and Hartford Accident & Indemnity Co., (collectively Hartford) insured Tomlinson, Dan Pierce, and others of their codefendants. Halliburton asserted that it was an insured of Hartford under Tomlinson's insurance policy, but Hartford denied this claim. Consequently, Halliburton undertook its own defense. Both Halliburton and Tomlinson settled with the plaintiffs before there was an adjudication of fault, except for one suit in Texas which Tomlinson settled after judgment but while an appeal was pending.

## TRIAL COURT PROCEEDINGS

¶2. In 1991, Hartford filed a complaint against Halliburton asserting Halliburton's negligence was the primary cause for the well blowout and that it was entitled to indemnity for expenses incurred in settlement

of the lawsuits against its insureds. The case was held in abeyance by court order until it was reactivated in 1997. Halliburton timely filed its response to Hartford's complaint. Halliburton next filed an amended answer and counterclaim alleging it was entitled to indemnity from Hartford. Shortly after responding to the counterclaim, Hartford moved the court to disqualify David Ringer, an attorney for Halliburton, based on his representation of Dan Pierce. This motion was denied. Ultimately, Halliburton filed a motion for summary judgment, which was granted in the trial court and certified as a final judgment under M.R.C.P. 54 (b).

¶3. Hartford moved the court to alter or amend the opinion and order to reflect that the judgment entered was a M.R.C.P. 12(b)(6) motion to dismiss or a Rule 12(c) judgment on the pleadings. Pursuant to this motion, Hartford sought leave to amend its complaint. The judge initially granted the order and Hartford filed an amended complaint. However, the judge was operating under the impression that Hartford's proposed order was an agreed order, and promptly rescinded the order which allowed the amendment when Halliburton objected. Hartford alleges Halliburton engaged in several ex parte communications with the court during this period. The court denied Hartford's motion to amend its complaint and certified that denial as final under M.R.C.P. 54 (b).

¶4. Aggrieved, Hartford has perfected this appeal.

## DISCUSSION OF LAW

### I. Standard of Review

### A.

¶5. Hartford alleges the motion granted against it was not a motion for summary judgment pursuant to M.R.C.P. 56, but rather, a motion for failure to state a claim for which relief can be granted or for a judgment on the pleadings pursuant to Rules 12(b)(6) or 12(c), respectively. The standards of review for all three are similar in that the non-moving party is favored in the review of the facts. *Cook v. Children's Med. Group, P.A.*, 756 So. 2d 734, 736 (Miss.1999).

¶6. We employ a de novo standard of review in analyzing a lower court's grant of a summary judgment. *Baptiste v. Jitney Jungle Stores of America, Inc.,* 651 So. 2d 1063, 1065 (Miss. 1995) (citing *Short v. Columbus Rubber & Gasket Co.,* 535 So. 2d 61, 63 (Miss. 1988)). A motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R.C.P. 56(c). To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under the rule. *Baptiste*, 651 So. 2d at 1065 (citing *Lyle v. Mladinich* 584 So. 2d 397, 398 (Miss. 1991)). "The Court cannot try issues of fact on a Rule 56 motion; it may only determine if there are issues to be tried." *Id.* (citing *Brown v. Credit Ctr., Inc.,* 444 So. 2d 358, 362 (Miss. 1983)).

¶7. Similarly, a motion to dismiss under M.R.C.P. 12(b)(6) raises an issue of law. *Arnona v. Smith*, 749 So. 2d 63, 65 (Miss. 1999) (citing *Tucker v. Hinds County*, 558 So. 2d 869 (Miss. 1990)). Consequently, this Court reviews such motions de novo. *Id.* (citing *UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc.*, 525 So. 2d 746, 754 (Miss. 1987)). When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim. *Id.*

¶8. A motion for judgment on the pleadings under M.R.C.P. 12(c) serves a similar function to the Rule

12(b)(6) motion to dismiss for failure to state a claim. *City of Tupelo v. Martin*, 747 So. 2d 822, 829 (Miss. 1999) (citing *Holland v. Kennedy* 548 So. 2d 982, 984 n.3 (Miss. 1989)). Therefore, it also raises an issue of law which we review de novo. *Id.*

## B.

¶9. Hartford additionally urges this Court to apply strict scrutiny in reviewing three orders in particular entered against it by the trial court. Hartford alleges these three orders were written by counsel for Halliburton and adopted verbatim by the trial judge. As an initial matter, this assertion is without consequence. Regardless of whether this Court finds the motion was pursuant to Rule 12 or Rule 56, our standard of review will still be de novo.

¶10. In any event, the three orders Hartford complains of are: (1) the order granting Halliburton's motion for summary judgment; (2) the order denying Hartford's motion to amend the order of summary judgment entered against it to reflect that it was truly an order to dismiss or for a judgment on the pleadings; and (3) the order staying the running of time for Halliburton to file its response to Hartford's amended complaint, pending the court's ruling on Hartford's motion to amend its complaint. Halliburton does not dispute that it authored these orders or that the trial judge adopted them without change. Instead, Halliburton counters by asserting the trial judge also adopted orders written by Hartford without making any changes.

¶11. The standard of review as applied to these orders only encompasses the findings of fact in the order in question. Questions of law are reviewed de novo. *Amiker v. Drugs For Less, Inc.*, 2000 WL 1161055 (Miss. 2000) (citing *In re Bodman*, 674 So. 2d 1245, 1247 (Miss. 1996)).

¶12. We have already given a detailed annunciation of the appropriate scope of review in *Rice Researchers, Inc. v. Hiter*, 512 So. 2d 1259 (Miss. 1987). We recognized that due to complex cases and immense caseloads trial judges will often have to rely on trial counsel to a great extent. Thus, we held that it was within the court's sound discretion to adopt findings of fact and conclusions of law verbatim from a party. *Id.* at 1266. Yet, we cautioned judges against taking the "McDonald's" approach to the judicial process and enunciated that even with the case complexities and heavy caseloads in mind, "a judge is still a judge and not a rubber stamp." *Id.* We stated that we can, and will, intervene "where the trial judge wholly abdicates his judicial responsiblities -where, as it were, he abuses his discretion." *Id.* While we declined to review such findings of fact de novo, we recognized that "our appellate deference to such findings is necessarily lessened." *Id.*

## II. Summary Judgment

### A. Whether Halliburton's Motion for Summary Judgment

### Was Truly a Motion Pursuant to Rule 12(b)(6) or Rule 12(c)

¶13. Hartford alleges two points of error with the summary judgment granted against it. First, Hartford asserts summary judgment was improper because a genuine issue of material fact exists as to its indemnity claim. Second, Hartford alleges that the motion for summary judgment decided in the trial court was, in reality, a motion pursuant to Rule 12(b)(6) or Rule 12(c).

¶14. Through the eyes of Hartford, the distinction between the designation of the motion is crucial: if the motion was for summary judgment, then the hearing and ruling address the merits of the case and any

further proceeding will be barred on the basis of res judicata. M.R.C.P. 56, cmt. However, if the lack of extrinsic evidence converts the summary judgment motion into a motion pursuant to Rule 12, res judicata will not bar any further course by Hartford and Hartford may *potentially* amend its complaint pursuant to Rule 15 (Hartford asserts it has an *absolute* right to amend pursuant to Rule 15).[1]

¶15. First, we address the issue of the true nature of the motion filed by Halliburton. M.R.C.P. 56 provides for motions for summary judgment as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Motions pursuant to Rule 12(b)(6) seek to establish that the plaintiff has failed to state a claim upon which relief can be granted, while motions pursuant to Rule 12(c) seek a judgment on the basis of the pleadings. Both Rule 12(b)(6) and Rule 12(c) are decided on the face of the pleadings alone.

¶16. Halliburton filed the document that is now in question. It was styled as a motion for summary judgment. The motion itself contained neither affidavits nor any extrinsic or supporting documents. Hartford's response, likewise, did not contain any materials extrinsic to the pleadings. Neither party filed anything other than their respective briefs. Halliburton had filed its first set of interrogatories, requests for admissions, and requests for production of documents at the time the trial court heard arguments on the motion. An entry on the Rankin County Circuit Clerk's docket reflects that Hartford responded to Halliburton's propounded discovery. Yet, the table of contents of the record now before this Court fails to reflect their inclusion and after a careful review of the record, we are unable to find these responses. No depositions have been taken, and no discovery has been completed.

¶17. Thus, at the hearing on Hartford's motion for summary judgment, all the trial court had before it were the pleadings, Halliburton's propounded discovery, and Hartford's motion to disqualify an attorney for Halliburton along with several reply briefs from both parties. The reply brief submitted by Hartford was supported by affidavits and excerpts of Dan Pierce's answers to interrogatories from Pierce's own litigation. The affidavits and Dan Pierce's answers to the interrogatories were submitted in relation to Hartford's motion to disqualify David Ringer, not the motion for summary judgment.[2] Hartford now argues that this motion was in truth either a motion to dismiss for failure to state a claim on which relief can be granted under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c), and consequently, it is now entitled leave to amend its complaint pursuant to Rule 15.

¶18. Hartford stresses the following exchange between the trial judge and counsel for Halliburton:

> THE COURT: . . .Did Halliburton file a motion to dismiss also? Are there any affidavits attached to any of these pleadings? It looks to me like it's a motion to dismiss.

> MR. ADAMS: It basically is. That there's no fact issue established by the motion nor by their response by affidavit.

¶19. It additionally appears that the trial judge considered Halliburton's motion in terms of both Rule 12 and Rule 56. The judge informed counsel for Halliburton:

> . . . I think Mr. Gunn is entirely correct. This case is not in a position right now for me to grant a

summary judgment. I think that their pleadings are sufficient enough to get them into some discovery in this case. But I want to get back to the motion to dismiss. Do you think - what's your position on motion to dismiss in this case, based on the case law here?

¶20. Hartford asserts the language of Rule 56 itself *requires* materials extrinsic to the pleadings be filed, and a failure to do so results in the conversion of the motion into one under Rule 12. Hartford cites to *Walker v. Cleveland Lumber Co.*, 512 So. 2d 695 (Miss. 1987); *Millican v. Turner*, 503 So. 2d 289 (Miss. 1987); and *Kountouris v. Varvaris*, 476 So. 2d 599 (Miss. 1985), to support its argument.

¶21. In *Kountouris*, the plaintiff and defendants were all seeking title to certain Greek island property. One of the defendants operated under the general power of attorney of his father-in-law. He attempted to use this power of attorney to convey a portion of the property to his wife. The plaintiff was the son of the decedent and brother-in-law to the defendant acting under the power of attorney. The plaintiff asserted that the power of attorney granted to his brother-in-law by his father was null and void, as well as asserting claims of fraud and undue influence. The plaintiff filed alternatively either for judgment on the pleadings or for summary judgment. The trial court summarily granted a judgment in favor of the plaintiff without reference to which rule it was granting judgment under. We affirmed in part, and reversed and remanded in part.

¶22. Hartford directs our attention to that portion of *Kountouris* which stated, "when a motion for summary judgment is filed and the court determines that it may appropriately be acted upon without reference to matters outside the pleadings, the judgment entered shall be a judgment on the pleadings." *Kountouris*, 476 So. 2d at 603 n.3 (citing 2A *Moore's Federal Practice* § § 56.09 (2d ed. 1983); *Wright & Miller, Federal Practice & Procedure*: Civil § § 1369 & 2713 (1985)). However, that portion of the trial judge's order which we reversed and remanded had nothing to do with how the motion was styled. We held that the trial judge had applied the wrong rules of Mississippi law.

¶23. We decided *Millican v. Turner*, 503 So. 2d 289 (Miss. 1987), two years after *Kountouris*. In *Millican*, the issue was under what circumstances a creditor who has repossessed collateral will be deemed to have retained that collateral in satisfaction of the debt which it secures. *Id.* at 291. Millican filed both a motion for summary judgment and a motion to dismiss for failure to state a claim upon which relief can be granted. After a bench trial, the trial court entered a judgment in favor of Turner. Millican asserted as error, inter alia, that his motion for summary judgment should have been granted. We referred to *Kountouris* when we rejected Millican's claim and stated: "Because the motion was based solely on the pleadings, we will treat it as a motion for judgment on the pleadings, pursuant to Rule 12(c)." *Id.* at 292. However, Millican sought judgment for matters which, *as he was the plaintiff*, he would carry the burden of proof at trial. In fact, we added in a footnote that:

> We do not imply that Millican, to the extent that his summary judgment motion encompassed Turner's affirmative defense, was required to submit affidavits showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 265 (1986) *(party moving for summary judgment on issue as to which non-moving party will bear burden of proof at trial is not required to submit affidavits or other similar materials negating non-movant's claim)* (emphasis added).

476 So.2d at 603, n.3.

¶24. Lastly is ***Walker v. Cleveland Lumber Co.***, 512 So. 2d 695 (Miss. 1987). Plaintiff filed suit against defendant on an open account. The defendant's response was a general denial, an affidavit, and an affirmative defense that no account existed between himself and the plaintiff. Plaintiff made an oral motion for summary judgment at a hearing on defendant's motion in limine. *The circuit judge converted the motion into one on a judgment on the pleadings*. The judge granted the motion in favor of plaintiff, holding that defendant would not be allowed to introduce evidence of his defense. The circuit judge concluded his defense was an affirmative defense and the defendant had failed to plead it specifically in compliance with M.R.C.P. 8(c). We reversed holding that a denial of the existence of an account is sufficient in an open account action to put into issue defendant's liability. *Id.* at 696. (citing ***McLaurin v. Smith's Poultry & Farm Supply***, 499 So. 2d 1361 (Miss. 1986)). In a footnote to his concurring opinion, Justice Robertson wrote:

> Even though [Plaintiff] moved for summary judgment, the Circuit Court was within its authority in treating the motion as one for judgment on the pleadings. Under certain conditions, motions for summary judgment and for judgment on the pleadings are interchangeable. Since the Circuit Court did not consider matters beyond the pleadings, we should treat his ruling as sustaining the motion for judgment on the pleadings, not as having sustained a motion for summary judgment. *See* Rule 12(c), Miss. R. Civ. P., and Official Comment to Rule 56, Miss. R. Civ. P.; ***Walton v. Bourgeois***, 512 So. 2d 698, 699 (Miss. 1987); ***Educational Placement v. Wilson***, 487 So. 2d 1316, 1320 (Miss. 1986); ***Kountouris v. Varvaris***, 476 So. 2d 599, 602 n.3 (Miss. 1985); ***Griffin v. Ware***, 457 So. 2d 936, 938 (Miss. 1984).

¶25. An inescapable observation in all three of these cases is that they were *decided* solely on the basis of the pleadings, which is clearly the standard contemplated by Rule 12. It was not simply that nothing outside the pleadings was presented to the respective courts, but that the disposition of each case required no deeper a glance be cast than to the face of the pleadings themselves.

¶26. The present case presents an unusual problem. One of Halliburton's main assertions is that the claims Hartford settled alleged both *active* and passive negligence, and because Hartford settled claims alleging active negligence, it is prohibited from seeking indemnity. However, there is no record of Halliburton filing the underlying complaints against Hartford until well after the motion for summary judgment was granted. Hartford concludes this necessarily renders the court's order into a judgement on the pleadings. This Court disagrees.

¶27. What Hartford overlooks in its argument is the fact that while the original complaints were not filed with the motion, the court apparently considered them. Counsel for Halliburton asserted that:

> We've made some copies of some of the complaints to show you that when Tomlinson-Hartford settled these complaints, they were settling complaints which charged them with active negligence, just like in the ***Jesco*** case. When the court looked at the complaints in the ***Jesco*** case, they saw that Long Term Care settled those active negligence claims. The Supreme Court hung its hat and did not allow the suit to go forward and confirmed the granting of summary judgment just like we're asking you to do here.

¶28. Hartford never objected to any discussion regarding these settlements. In its response to Halliburton's counterclaim, Hartford admitted that "it was on notice and had copies of complaints in the cases in which it was defending its insureds. . . ." Even if matters outside the pleadings were not *filed* in the court, a review

of the record demonstrates that arguments on the motion went beyond the face of the pleadings and crossed the line to addressing the merits of the case.

¶29. The Court finds that the true question is not whether materials outside the pleadings were submitted and considered by the trial court, but rather, whether the movant has properly carried his burden on the motion. The comments to M.R.C.P. 56 are illuminating. They clearly state that a motion for summary judgment "*may be made on the basis of the pleadings **or** other portions of the record **or** it may be supported by outside material*" (emphasis added). This language is permissive, not mandatory. The comments to the Rule further distinguish between a motion for summary judgment under Rule 56 from motions made under Rule 12 in terms of exactly what the movant's motion attacks and seeks to accomplish:

> [A] motion under Rule 12(b)(6) for failure to state a claim on which relief can be granted is addressed to the claim itself, the movant merely is asserting that *the pleading* to which the motion is directed does not sufficiently state a claim for relief; unless the motion is converted into one for summary judgment as permitted by the last sentence of Rule 12(b), it does not challenge the actual existence of a meritorious claim.

> A motion for judgment on the pleadings, Rule 12(c), is an assertion that the moving party is entitled to a judgment on the face of all the pleadings; *consideration of the motion only entails an examination of the sufficiency of the pleadings*.

> In contrast, a summary judgment motion is based on the pleadings and any affidavits, depositions, and other forms of evidence relative to the merits of the challenged claim or defense *that are available at the time the motion is made*. The movant under Rule 56 is asserting that *on the basis of the record as it then exists,* there is no genuine issue as to any material fact and that he is entitled to a judgment on the merits as a matter of law.

M.R.C.P. 56 cmt. (emphasis added).

¶30. We have stated the party moving for summary judgment has the job of *persuading* the court, first, that there is no genuine issue of material fact and, second, that on the basis of the facts established, he is entitled to judgment as a matter of law. *Fruchter v. Lynch Oil Co.*, 522 So. 2d 195, 198 (Miss. 1988) (emphasis added). The movant carries a burden of persuasion, not a burden of proof. *Id.* *"The movant has the burden of production only where at trial the movant would have the burden of proof."**Id.* (emphasis added) Claude L. Stuart, III observes in his law journal article that if *Fruchter* is read literally, the moving party bears no burden of production on issues which the non-moving party will bear the burden of proof at trial. Claude L. Stuart, III, *Summary Judgment: A Trial Practitioner's Guide to Mississippi Rule of Civil Procedure 56*, 59 Miss. L.J. 284, 300 (1989). Stuart additionally points to this Court's decision in *Tucker v. Hinds County*, 558 So. 2d 869 (Miss. 1990) where we said the moving party has the burden of "demonstrating" that no genuine issue of material fact exists. *Id.* at 872. Thus, the question becomes, what the movant must do to sufficiently "demonstrate" no genuine fact issue exists when he does not bear the burden of proof at trial. According to Stuart:

> Under *Celotex* [*Corp. v. Catrett*, 477 U.S.. 317 (1986)], as adopted by the Mississippi Supreme Court in *Fruchter* and other cases, the movant has no duty to provide an evidentiary predicate to negate the existence of a material fact as to those issues on which he does not bear the burden of proof at trial. Rather, as to issues where the movant does not bear the burden of proof at trial, he

must initially only make a sufficient "informing," "pointing out," or "showing" that there is an absence of evidence to support the non-movant's case.

59 Miss. L.J. at 303.

¶31. Even more recently, we stated that "once a party *files* a motion for summary judgment, the party opposing the motion 'may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" *MST Inc. v. Mississippi Chem. Corp.,* 610 So. 2d 299, 304 (Miss. 1992) (emphasis added).

¶32. The Mississippi Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, and we have looked to the federal interpretations of our state counterparts as persuasive authority. *See Owens v. Thomae*, 759 So. 2d 1117,1121 n.2 (Miss. 1999); *Quinn v. Mississippi State Univ.*, 720 So. 2d 843, 846 (Miss. 1998); *Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 364 n.1 (Miss. 1984). The few federal interpretations to pass on this question regarding Federal Rule 56 hold that a motion for summary judgment may be based on the pleadings alone. *See* 10A Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2713 (3d ed. 1998) ("a summary-judgment motion may be made on the basis of the pleadings alone"); *McWhirter Distrib. Co. v. Texaco Inc.,* 668 F.2d 511, 519 n.11 (Temp. Emer. Ct. App. 1981) ("Even though the typical role of summary judgment is to go beyond the pleadings to consider matters provided by affidavit, deposition, and other extrapleading materials, summary judgment may be based solely on the pleadings). *See also Chambers v. United States,* 357 F. 2d 224 (8th Cir. 1966); *Reynolds v. Needle,* 132 F.2d 161 (D.C. Cir. 1942).

¶33. Because Halliburton's motion addressed the merits of Hartford's case, we conclude that the motion in the trial court was one for summary judgment.

## B. Whether the Entry of Summary Judgment was Proper

¶34. In this state, the origins of indemnity are as follows:

> An obligation to indemnify may arise from a contractual relation, from an implied contractual relation, or out of liability imposed by law. When one person is required to pay money which another person in all fairness should pay, then the former may recover indemnity from the latter in the amount which he paid, provided the person making the payment has not conducted himself in a wrongful manner so as to bar his recovery.

*Bush v. City of Laurel*, 215 So. 2d 256, 259 (Miss. 1968) (citing 42 C.J.S. § 20 (1944)).

¶35. Hartford asserts Halliburton's liability arises from an implied contractual relationship. We have previously stated that the two "critical" prerequisites of noncontractual implied indemnity in Mississippi are:

> (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and

> (2) it must appear that the claimant did not actively or affirmatively participate in the wrong.

*Home Ins. Co. v. Atlas Tank Mfg. Co.*, 230 So. 2d 549, 551 (Miss. 1970) (citing *Bush v. City of*

*Laurel*, 215 So. 2d 256 (Miss. 1968); *Southwest Miss. Elec. Power Ass'n v. Harragill*, 254 Miss. 460, 182 So. 2d 220 (1966)).

¶36. The settlements paid by Hartford were voluntary, and consequently, summary judgment was properly entered against it. In order for Hartford to prevail on its indemnity claim, it must allege and prove that (1) it was legally liable to an injured third party, (2) it paid under compulsion, and (3) the amount it paid was reasonable. *Certain Underwriters at Lloyd's of London v. Knostman*, 783 So.2d 694 ¶10 (Miss. 2001)(citing *Keys v. Rehab. Ctrs., Inc.*, 574 So. 2d 579, 584 (Miss. 1990)).

¶37. This Court finds that Hartford has failed to establish evidence that it paid under compulsion of law. Hartford alleges its original complaint complies with our requirements for notice pleading, and that it states a claim for indemnity. However, the original complaint only states that Hartford's insured, Tomlinson, contracted with Halliburton and that Halliburton breached the contract by performing negligently. It additionally states that Hartford is entitled to recover the payments it made from Halliburton. Yet, nowhere in this complaint does Hartford set forth its own basis of liability. Hartford asserted in later pleadings and in its amended complaint (which was ultimately denied in the trial court), and asserts now in this Court, that it settled the claims filed against its insureds because of "potential" liability arising from the theories of strict liability, vicarious liability, nuisance, and trespass. However, the United States District Court for the Northern District of Mississippi rendered an *Erie*-guess as to how we would decide this issue in *Maryland Casualty Co. v. R. H. Lake Agency, Inc*, 331 F. Supp. 574 (N.D. Miss. 1971). Maryland Casualty claimed that it would be able to proved at trial that it "might" or "could be" liable to its insureds. The court rejected potential liability as a sufficient basis for recovery and stated:

> In order to recover from defendant on the theory of indemnity it is encumbent upon plaintiff to show that plaintiff was legally liable to [the plaintiffs with which it settled] . . . *Plaintiff cannot recover under this legal principle on the theory that plaintiff might have been liable to [those with whom it settled] if plaintiff had not settled with [them]* (emphasis added).

*Id.* at 579 (citing 41 Am. Jur. 2d, Indemnity, § 33). However, it is important to note that in *Maryland Casualty*, the court already had the benefit of certain jury determinations. Maryland Casualty asserted that its agent had issued a trip accident and baggage insurance policy to Ingram in direct violation of Maryland Casualty's policies. While this policy was effective, Ingram was shot through both legs and, consequently, lost both of his feet. Maryland Casualty settled with Ingram and then sought indemnity from its agent. The trial court submitted interrogatories to the jury. The jury answered these interrogatories by finding that Ingram's shooting was not "accidental." The necessary result of the jury's finding was that Ingram's injuries were not covered by the policy because they were not accidental.

¶38. We cited to *Maryland Casualty* with approval in *Keys v. Rehabilitation Ctrs., Inc*., 574 So. 2d 579 (Miss. 1990). In *Keys*, the indemnity claim arose from a contract between a close corporation and a former shareholder, Keys. The corporation settled a wrongful death claim pending against it and then sued Keys for his pro rata share. The wrongful death claim settled without a trial; consequently, there was no adjudication of fault. The corporation sued Keys after he refused its demands to indemnify it according to the indemnity agreement. This claim proceeded to trial. The jury found that Keys was liable to the corporation under the indemnity agreement. Keys' argument before this Court was that even if the indemnity agreement was enforceable, he was still not liable because the corporation failed to prove that it paid under compulsion. We said:

> Under the rules of [our prior] cases, predicate to recovering indemnity from the Keyses, [plaintiff] was obligated to prove that it was liable for the [wrongful] death. On the other hand, indemnifying parties such as the Keyses have no right to insist that their indemnitee endure the hazards of trial by jury as a condition for enforcing the indemnity agreement. [citations omitted] Absent some contractual provision to the contrary [plaintiff] was entitled to use its own good judgment and effect such settlement of the wrongful death claim as it deemed prudent, provided only that when proceeding to enforce the indemnity agreement that it prove that it was indeed liable to the [wrongful death] survivors and that the amount it paid in settlement was reasonable. *An indemnitee such as [plaintiff] cannot simply settle, and then send the indemnitor his share of the bill. It must, in the words of our rule, prove that it paid under compulsion and no case more perceptively illustrates this point than* **Maryland Casualty Co. v. R. H. Lake Agency, Inc**.

*Id.* at 584, 585. We held it was error for the underlying issue of the corporation's liability not to have been submitted to the jury along with the indemnity agreement issue, and the record was insufficient for us to imply such liability although substantial evidence existed. Consequently, we reversed and remanded.

¶39. We very recently addressed a case almost identical to the case sub judice, which action arose from the same well blowout at issue here. In ***Certain Underwriters at Lloyd's of London v. Knostman***, 783 So.2d 694 (Miss. 2001), Tomlinson (Hartford's insured) was the defendant. Pursuant to a contract with Tomlinson, Texas Snubbing performed certain activities in conjunction with the drilling of the well. After the well blowout, Texas Snubbing was one of the named defendants, along with Tomlinson, Halliburton, Dan Pierce, and others. Texas Snubbing settled the claims against it prior to any adjudication of fault. Texas Snubbing, in turn, sued Tomlinson for indemnity. The trial judge granted Tomlinson's motion for summary judgment. We affirmed.

¶40. This Court, relying on ***Keys***, *supra*, held that Texas Snubbing's payments were voluntary. Texas Snubbing presented arguments similar to the ones now presented by Hartford. Texas Snubbing asserted that it *would have been able* to prove that it was legally liable to the injured party and that it paid under compulsion at trial. *Id.* at ¶ 12. We rejected this argument due to the Texas Snubbing president's consistent denial of liability "or any wrongdoing associated with the blowout in previous depositions and court proceedings."*Id.* The scenario in the case now before us is identical.

¶41. Hartford has consistently denied any wrongdoing on its part. The furthest departure Hartford makes from this denial is to assert "potential" liability. As discussed above, this is simply not sufficient. As Hartford was the plaintiff, it was encumbent on Hartford to present something, anything, to at a minimum, create a genuine issue of material fact. It failed to do so.

¶42. Even if this Court determines that Hartford's settlements were made under compulsion of law and not with the status of a volunteer, we find that summary judgment is still appropriate against Hartford because it failed to meet its burden of proof. Clearly, Hartford realized that it would carry the burden of proving the elements of indemnity at trial. At the hearing on the motion, counsel for Hartford told the trial judge, "We attached a whole bunch of cases, the cases that are legion in Mississippi about whether you are entitled to common law indemnity or not. *But you can't just say it. I understand we have to prove it. . . .*" (emphasis added).

¶43. Because Halliburton would not carry the burden of proof at trial, it sufficiently fulfilled its burden of persuasion by "demonstrating" or "showing" or "pointing out" to the court that Hartford had settled claims

which alleged both active and passive negligence. Consequently, the burden then shifted to Hartford, as it would carry the burden of proof at trial, to offer evidence to rebut Halliburton's claim. We have repeatedly stated that the party against whom a motion for summary judgment is made "may not rest upon allegations or denials in her pleadings." *Fruchter*, 522 So. 2d at 198. Allegations or denials, without more, are insufficient to create an issue of fact sufficient to avoid summary judgment. *Id.* The burden is on the party opposing the motion to "by affidavit or otherwise set forth specific facts showing that there are indeed genuine issues for trial." *Id.* at 199. Hartford has not done this. Even more, Hartford has never refuted Halliburton's assertion that it settled claims of both active and passive negligence.

¶44. Consequently, this Court finds summary judgment is proper against Hartford.

### III. Amendments Pursuant to Miss. R. Civ. P. 15(a)

¶45. Hartford next claims that the trial court erred by entering the order which rescinded its prior order granting Hartford 10 days leave to amend its complaint. Hartford asserts that if the motion filed by Halliburton is converted into a motion under Rule 12, that it has the *absolute* right to amend the complaint pursuant to Rule 15(a), which states in part:

> On sustaining a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), or for judgment on the pleadings, pursuant to Rule 12(c), thirty days leave to amend shall be granted, provided matters outside the pleadings are not presented at the hearing on the motion. Otherwise a party may amend his pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires.

¶46. The Mississippi Court of Appeals recently rejected this argument of an absolute right to amend in *Jones v. Lovett*, 755 So. 2d 1243 (Miss. Ct. App. 2000). The Court of Appeals cited to the U. S. Supreme Court decision in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L. Ed. 222 (1962), which we cited favorably in *Red Enter., Inc. v. Peashooter, Inc.*, 455 So. 2d 793, 795 (Miss. 1984). In *Jones*, the Court of Appeals denied appellant's plea to reverse the trial court's refusal to allow her amended complaint relying on the following language:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded . . . if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require, be "freely given."

*Jones*, 755 So.2d 1247 (citing *Foman*, 371 U.S. at 182, 83 S. Ct. at 227). The Court of Appeals refused to reverse the trial court and grant appellant leave to amend her complaint. The court ruled that she had exercised undue delay and lack of diligence by waiting years to make her application to amend, and in any event, any amendment would be futile. *Id.* at 1248.

¶47. This Court is of the opinion that this reasoning should apply to the present case. This case was reactivated in 1997. An agreed scheduling order was entered on April 11, 1997 which gave Hartford 30 days to amend its complaint. An amended agreed order was entered on June 2, 1997, which gave Hartford

60 days to amend its complaint. Yet, Hartford failed to submit an amended complaint until after summary judgment was entered against it. The trial court questioned Hartford as to whether it had amended its complaint. Hartford's repsonse was "[i]t has never been amended. And we will obviously have to amend, if nothing else, the indemnity clause in the complaint."

¶48. Hartford had the opportunity to amend its complaint prior to Halliburton's answer being served. It did not do so. Twice, Hartford was given additional time to amend its complaint. It failed to do so either time. Thus, we find Hartford should not now be heard to complain on this issue when it had ample opportunity and time to amend its complaint, and has offered no justification for why it did not do so.

¶49. However, if this Court determines the motion was one for summary judgment, Rule 15 provides that leave to amend shall be freely given when justice so requires. We find the answer remains the same. In passing on this issue, we have already held that Rule 56 requires actual diligence. ***Bourn v. Tomlinson Interest, Inc.***, 456 So. 2d 747, 749 (Miss. 1984). In ***Bourn***, we favorably cited:

> The liberal amendment policy of the Federal Rules was not intended to allow a party to circumvent the effects of summary judgment by amending the complaint every time a termination of the action threatens. The time must arrive in every case when the plaintiff must demonstrate that there is a genuine issue for trial or have summary judgment entered against him.

***Bourn***, 456 So. 2d at 749 (citing ***Glesenkamp v. Nationwide Mut. Ins. Co.,*** 71 F.R.D. 1, 4 (N.D. Cal. 1974), *aff'd*, 540 F.2d 458 (9th Cir. 1976)).

¶50. The time for Hartford to demonstrate a genuine issue for trial has already come and gone. Hartford had several opportunities to submit an amended complaint. Because it failed to submit an amended complaint within the time frame that it agreed to, and because no justification has been offered for this failure, the trial court did not err in refusing Hartford's request.

### IV. Motion to Disqualify David Ringer

### A.

### Standard of Review

¶51. A trial court's findings of fact when considering a motion to disqualify an attorney are reviewed for manifest error. ***Colson v. Johnson***, 764 So. 2d 438, 439 (Miss. 2000) (citing ***Quick Change Oil & Lubrication Co. v. County Line Place, Inc.***, 571 So. 2d 968, 970 (Miss. 1990)). The court has broad discretion. ***Id.***

### B.

¶52. Hartford's grievance with David Ringer emanates from Ringer's representation of Dan Pierce. Pierce was among the numerous defendants named in the litigation arising from the well blowout. Hartford initially declined to extend its coverage to Pierce because Pierce was not a "named" insured under Tomlinson's policy. Pierce hired Ringer to represent his interests. After Ringer made demands on Hartford on behalf of Pierce, Hartford's investigation revealed that its agent had been instructed to make Pierce and his organization a named insured. Thereafter, Hartford undertook payment of Pierce's defense. Ringer continued as Pierce's attorney. Hartford alleges it paid Ringer in excess of $930,000 for legal fees and

"reimbursable expenses."

¶53. Hartford hired Curtis Coker to represent Tomlinson in the blowout litigation. Hartford asserts Coker determined Halliburton was the truly negligent party. Coker hired Jim Langston as an expert witness, and Hartford paid Langston's fees. Hartford asserts Coker "allowed Ringer to meet with Mr. Langston and question Mr. Langston as freely as he wished." Hartford claims Langston is the expert witness it intended to use in the present case when it went to trial. Thus, it complains that Ringer is now representing Halliburton, but has had "personal meetings" with Hartford's own expert. Hartford contends Ringer represented both it and Pierce in the blowout litigation, and that Ringer learned confidential information from the expert Hartford intended to use in the present case. Hartford additionally refers to Dan Pierce's answers he gave to interrogatories in defense of his own suit. Pierce asserted in these answers that Halliburton (whom Ringer now represents) was the sole cause of the well blowout. Ringer signed these answers. Lastly, Hartford makes reference to another expert witness, Pete Courtney, hired by Ringer. Hartford asserts that Ringer and Coker agreed to split the costs for Courtney, and that Hartford ultimately paid the bill for him as well. Hartford concludes the foregoing disqualifies Ringer from representing Halliburton in the current litigation under Miss. R. Prof. Conduct 1.9 which governs an attorney's conflict of interest regarding former clients. Hartford emphasizes the portion of the comments to Rule 1.9 which states: "When a lawyer has been directly involved in a specific transaction, subsequent representations of other clients with materially adverse interests is clearly prohibited."

¶54. Halliburton first asserts this issue is procedurally barred by M.R.C.P. 54(b). We agree. Rule 54(b) requires that:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

¶55. Halliburton's counterclaim seeking indemnity from Hartford is still pending. Halliburton asserts the only order made denying the motion to disqualify Ringer was oral. A few points of clarification are needed at this juncture: Judge Goza was the judge presiding over this case prior to Judge Kitchens. Judge Goza orally denied this motion, but an order was never entered. When this matter came before Judge Kitchens, he was considering a motion already decided by Judge Goza. On May 17, 1999, Judge Kitchens signed an order denying Hartford's motion to reconsider its motion to disqualify Ringer. The Rankin County Circuit Clerk's docket sheet reflects this order was filed May 18, 1999. However, there has been no certification by the trial court that there is no just reason for delay. Hartford never addressed this procedural issue in its reply brief.

¶56. Both parties refer to the two-part test developed by the United States Court of Appeals for the Fifth Circuit for attorney disqualification under these circumstances. The two elements are: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify; and (2) a substantial

relationship exists between the subject matter of the former and the present representations. ***Johnson v. Harris County Flood Control Dist.***, 869 F.2d 1565, 1569 (5th Cir. 1989). There has been no dispute regarding whether the subject matter is substantially related. The only meaningful point of dispute is whether David Ringer ever "represented" Hartford. We find that Hartford has failed to establish that an attorney-client relationship ever existed between itself and Ringer. Hartford seems to assert that Ringer is deemed to have represented it by virtue of his representing one of its insureds and Hartford's having paid his bill.

¶57. Hartford cites to ***Moeller v. American Guarantee & Liab. Ins. Co.***, 707 So. 2d 1062 (Miss. 1996) and ***Hartford Acc. & Indem. Co. v. Foster***, 528 So. 2d 255 (Miss. 1988) for the principle that an attorney who is employed to represent an insured is representing both the insured and the insurer. Yet, both of these cases are factually distinguishable from the case sub judice. In both cases, the insurance company retained the attorney who would ultimately represent the insured. Conversely, Pierce independently hired Ringer prior to any admission of coverage by Hartford. Ringer's representation continued after Hartford agreed to pay. Ringer stated in his affidavit that Hartford was never given a choice as to who would represent Pierce, but rather, he informed Hartford that he was representing Pierce and left Hartford to decide whether or not it would fund the representation.

¶58. Hartford asserts Coker's affidavit supports its assertion that Ringer represented both it and Pierce. Yet, Coker's affidavit stated that he believed *himself* to be reprenting both *Tomlinson* and Hartford. The relationships between Coker and Hartford, and Coker and Tomlinson, were wholly independent of the relationship Hartford had with Ringer.

¶59. Hartford asserts that in his representation of Pierce, Ringer "learned confidential information from the expert witness that Hartford plans to use in this case." Ringer's affidavit asserts that he did not learn anything confidential from the expert, and learned nothing beyond that which he could have gained in a deposition. Hartford never states exactly what information Ringer allegedly learned that would be harmful to it in this case; all that Hartford asserts is this broad, vague allegation.

¶60. Consequently, we find that Hartford's motion to disqualify David Ringer was properly denied.

### V. CONCLUSION

¶61. The motion before the Court was properly labeled as one for summary judgment. As Hartford was the plaintiff, Hartford would carry the burden of proof at trial. Hartford relied only on the allegations and denials in its memoranda; therefore, the grant of summary judgment against Hartford was appropriate. Further, Hartford has failed to demonstrate that it made the settlements under compulsion of law. The result is that Hartford paid them as a volunteer, a position for which Mississippi law provides no recovery. Because Hartford twice failed to amend its complaint pursuant to two different agreed scheduling orders, denial of its subsequent leave to amend was proper. Lastly, it was not manifest error to deny Hartford's motion to disqualify attorney David Ringer. Hartford failed to establish that an attorney-client relationship ever existed between itself and Ringer. An attorney-client relationship is a condition precedent to an attorney disqualification for conflicts of interest with a former client.

¶62. **AFFIRMED.**

    **PITTMAN, C.J., SMITH, WALLER, COBB AND DIAZ, JJ., CONCUR. BANKS AND McRAE, P.JJ., AND EASLEY, J., DISSENT WITHOUT SEPARATE OPINION.**

1. Hartford's claim that it has an *absolute* right to amend its complaint is addressed in § III.

2. Hartford's motion to disqualify David Ringer is addressed in § IV.